LexisNexis®

**Bath & Body Works, Inc., Plaintiff v. Wal-Mart Stores, Inc., et al., Defendants**

**Case No. C-2-99-1190**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO, EASTERN DIVISION**

*2000 U.S. Dist. LEXIS 20168*

**September 12, 2000, Filed**

**DISPOSITION:** [*1] Court HELD that BBW's May 30, 2000 motion to amend complaint (doc. 22) GRANTED and that Hanna's December 20, 1999 motion to dismiss (doc. 6); Hanna's December 28, 1998 motion to stay or, in the alternative; transfer venue (doc. 8); and Hanna's December 28, 1999 amended motion to dismiss (doc. 9) DENIED.

**COUNSEL:** For BATH & BODY WORKS, Inc, plaintiff: John L Landolfi, Vorys Sater Seymour & Pease, Columbus, OH.

For BATH & BODY WORKS, Inc, plaintiff: Frank J Colucci, Colucci & Umans, New York, NY.

For BATH & BODY WORKS, Inc, plaintiff: David M Dahan.

For WAL-MART STORES INC, HANNA'S CANDLE CO, defendants: Melvin Donald Weinstein, Kegler Brown Hill & Ritter, Columbus, OH.

For WAL-MART STORES INC, HANNA'S CANDLE CO, defendants: Eric W Beery, Beery & Spurlock Co LPA, Columbus, OH.

For WAL-MART STORES INC, HANNA'S CANDLE CO, defendants: Paul V Storm, Grady K Bergen, Carr & Storm, Dallas, TX.

For WAL-MART STORES INC, HANNA'S CANDLE CO, defendants: Trent Keisling, Ed Johnson & Kachigian, Fayetteville, AK.

For HANNA'S CANDLE CO, counter-claimant: Eric W Beery, Beery & Spurlock Co LPA, Columbus, OH.

For HANNA'S CANDLE CO, counter-claimant: Paul V Storm, Grady [*2] K Bergen, Carr & Storm, Dallas, TX.

For HANNA'S CANDLE CO, counter-claimant: Trent Keisling, Ed Johnson & Kachigian, Fayetteville, AK.

For BATH & BODY WORKS, counter-defendant: John L Landolfi, Vorys Sater Seymour & Pease, Columbus, OH.

For BATH & BODY WORKS, counter-defendant: Frank J Colucci, Colucci & Umans, New York, NY.

For BATH & BODY WORKS, counter-defendant: David M Dahan.

**JUDGES:** Edmund A. Sargus, Jr., United States District Judge. Magistrate Judge Abel.

**OPINION BY:** Edmund A. Sargus, Jr.

**OPINION**

OPINION AND ORDER

Plaintiff Bath & Body Works, Inc. ("BBW") brings this action under the Lanham Act, *15 U.S.C. § 1051, et seq.*, against defendants Wal-Mart Stores, Inc. ("Wal-Mart") and Hanna's Candle Co. ("Hanna's"). BBW alleges that it has been offering for sale and selling a line of fruit scented candles under its trademark Nature's Preserves Candle and that defendant Wal-Mart is selling a candle made by Hanna's—the Fruit Jel Fresh Preserves candle—that is virtually identical to BBW's candle. BBW

further alleges that defendants deliberately and intentionally copied BBW's trade dress for its candle. BBW has asserted claims for violation of [*3] § 43(a) of the Lanham Act, common law trade dress infringement, and common law unfair competition and misappropriation.

This matter is before the Court on Hanna's December 20, 1999 motion to dismiss (doc. 6); Hanna's December 28, 1998 motion to stay or, in the alternative, transfer venue (doc. 8); Hanna's December 28, 1999 amended motion to dismiss (doc. 9); and BBW's May 30, 2000 motion to amend complaint (doc. 22). For the reasons that follow, BBW's motion is granted, and Hanna's motions are denied.

### I. Facts

BBW is a Delaware corporation with its principal place of business located in Reynoldsburg, Ohio. (Compl., P1.) BBW owns and operates over 1,000 Bath & Body Works stores nationwide. (*Id.*) These stores sell a wide range of personal care, health, and beauty products. (*Id.*) Wal-Mart is a Delaware corporation with its principal place of business located in Bentonville, Arkansas. (*Id.*, P2.) BBW alleges that Wal-Mart has 1,869 discount department stores, 564 Wal-Mart Supercenters, and 451 Sam's Club stores nationwide. (*Id.*, P11.) Hanna's is an Arkansas corporation with its principal place of business located in Fayetteville, Arkansas. (*Id.*, P3.)

[*4] BBW has been selling a line of fruit scented candles under its trademark Nature's Preserves Candle since March of 1999. [1] (Compl., PP8, 9.) BBW alleges that it is using a unique and distinctive trade dress for its Nature's Preserves Candle, consisting of the following features: (1) a fruit scented candle in a clear glass mason jar and (2) fruit shaped icons surround by a clear fill, bearing the appearance of fruit preserves. (*Id.*) BBW also alleges that it has at least three design patent applications on file with the United States Patent and Trademark Office covering its candle. [2] (*Id.*, P10.)

> 1 In the proposed amended complaint, BBW alleges that it is the record owner of the trademark Nature's Preserves, Serial No. 75/693777, for candles in International Class 4 as well as for a variety of personal care products in International Class 3 and room deodorizing sprays in International Class 5. (Proposed Am. Compl., P10.) BBW further alleges that the Nature's Preserves mark was published for opposition on February 22, 2000, and a Notice of Allowance was issued on May 16, 2000. (*Id.*)

[*5]

> 2 In the proposed amended complaint, BBW alleges that on April 18, 2000, U.S. Design Patent

No. Des. 423,124, entitled Strawberry Candle Jar, was duly and legally issued; that on April 25, 2000, U.S. Design Patent No. Des. 423,693, entitled Melon Candle Jar, was duly and legally issued; that on May 2, 2000, U.S. Design Patent No. Des. 424,219, entitled Raspberry Candle Jar, was duly and legally issued; and on May 9, 2000, U.S. Design Patent No. Des. 424,718, entitled Raspberry Candle Jar, was duly and legally issued. (Proposed Am. Compl., P9.)

BBW alleges that Wal-Mart and Hanna's have adopted and begun using a trade dress for their Fruit Jel Fresh Preserves candle which is virtually identical to BBW's trade dress for its candle. (Compl., P13.) BBW further alleges that Wal-Mart and Hanna's deliberately and intentionally copied BBW's trade dress by selecting and copying each and every of the most distinctive features of BBW's trade dress for their trade dress. (*Id.*, P14.) BBW claims that Hanna's candle is sold nationwide by Wal-Mart, including its stores in Ohio. In addition, BBW states that [*6] Hanna's candle is sold in Ohio by Kohl's department stores and by an Ohio-based catalog company, Gooseberry Patch. (DeYoung Aff., P3; Colucci Aff., P5.)

### II. Motion to Dismiss

#### A. Standard of Review

BBW bears the burden of establishing personal jurisdiction over Hanna's. *See CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1261-62 (6th Cir. 1996).* When ruling on a jurisdictional motion to dismiss made pursuant to *Rule 12(b)(2)* without conducting an evidentiary hearing, a court must consider the pleadings and affidavits in the light most favorable to the plaintiff. See *id. at 1262.* Moreover, a "court disposing of a 12(b)(2) motion does not weigh the controverting assertions of the party seeking dismissal." *Id.* (quoting *Theunissen v. Matthews, 935 F.2d 1454, 1459 (6th Cir. 1991)).* Dismissal is proper only if all the specific facts which the plaintiff alleges collectively fail to state a *prima facie* case for jurisdiction. *See id.*

#### B. Discussion

A federal court applies the law of the forum state to determine whether personal jurisdiction exists. *See L.A.K., Inc. v. Deercreek Enterprises, 885 F.2d 1293, 1298 (6th Cir. 1989).* [*7] In order to make a prima facie showing of jurisdiction, plaintiff must establish that: (1) Ohio's long-arm statute confers personal jurisdiction and (2) the Court's exercise of personal jurisdiction would not offend the constitutional limits of due process under the *Fourteenth Amendment to the United States Constitution. See CompuServe, 89 F.3d at 1262.*

## 1. Ohio's Long-Arm Statute

The Court will first address whether Hanna's is subject to personal jurisdiction pursuant to Ohio's long-arm statute. [3] BBW asserts that personal jurisdiction over DFS exists pursuant to *Ohio Rev. Code §§ 2307.382(A)(1)-(4)*. *Section 2307.382* provides:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(1) Transacting any business in this state;

(2) Contracting to supply services or goods in this state;

(3) Causing tortious injury by an act or omission in this state;

(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any. other persistent course of conduct, or derives substantial revenue from [*8] goods used or consumed or services rendered in this state[.]

. . .

(C) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him.

*Ohio Rev. Code § 2307.382.*

3 Although Ohio's long-arm statute has been construed to give Ohio courts the maximum jurisdiction permitted under the Due Process Clause, the Supreme Court of Ohio has held otherwise. *See Goldenstein v. Christansen, 70 Ohio St. 3d 232, 638 N.E.2d 541, 545 n. 1 (Ohio 1994)(per curiam)*(stating "claim that the General Assembly intended the long-arm statute 'to give Ohio courts jurisdiction to the limits of the Due Process Clause' is erroneous, since that interpretation would render the first part of the court's two-part analysis nugatory"); *see also Cole v. Mileti, 133 F.3d 433, 436 (6th Cir.)*(stating that the Supreme Court of Ohio has held that Ohio's long-arm statute does not reach to the limits of the Due Process Clause), *cert. denied, 525 U.S. 810, 142 L. Ed. 2d 32, 119 S. Ct. 42 (1998)*; *LSI Industries,*

*Inc. v. Hubbell Lighting, Inc., 64 F. Supp. 2d 705, 707 (S.D. Ohio 1999)*(stating that the Supreme Court of Ohio has interpreted Ohio's long-arm statute as not reaching the limits of due process in all circumstances); *Walker v. Concoby, 79 F. Supp. 2d 827, 830-31 (N.D. Ohio 1999)*(concluding that Ohio's long-arm statute is not co-extensive with federal due process). Accordingly, the Court will examine whether jurisdiction is proper under both Ohio's long-arm statute and the Due Process Clause.

[*9] Hanna's contends that it is not subject to personal jurisdiction in Ohio for a number of reasons. First, Hanna's is an Arkansas corporation with its principal place of business in Arkansas, and all of Hanna's products, including the candle at issue in this lawsuit, are manufactured in Arkansas. (Scott Decl., PP3, 5.) [4] Second, Hanna's owns no property in Ohio, and it does not maintain an office or employ any employees or agents in Ohio. (*Id.*, P6.) Also, it does not pay any taxes in Ohio or advertise in Ohio. (*Id.*)

4 John Scott, the Chief Financial Officer of Hanna's, has submitted three declarations to the Court. Unless otherwise noted, citations to "Scott Decl." refer to statements made in his January 28, 2000 declaration.

Third, any sales of its Fresh Preserves candle directly to Ohio "would have been accomplished by a gift shop or small store placing an order with Hanna's in Arkansas for the product and it being mailed using UPS to the specific gift shop." (Scott Decl., P8.) These sales "would likely [*10] have been a result of the specific purchaser attending a trade show" outside Ohio because Hanna's has never attended a trade show in Ohio. (*Id.*, P9.) Also, these sales would not have resulted from any television, radio, newspaper, or magazine advertisements in Ohio because Hanna's does not target Ohio residents for sales of its products. (*Id.*, P6.) According to Hanna's Chief Financial Officer, John Scott, these sales make up less than 0.1% of Hanna's total sales nationally for the Fresh Preserves candle. (*Id.*, P10.) This percentage is based upon total national sales of 561,979 units of the Fresh Preserves candle and 492 units being sold to purchasers located in Ohio. (*Id.*) Hanna's maintains this amount is not "substantial revenue" for purposes of Ohio's long-arm statute.

Fourth, although Hanna's products are offered for sale over the internet through a website at www.candlemart.com, the website is owned and operated by eCandle, Inc. ("eCandle"), which is located in Fayetteville, Arkansas, and Hanna's does not process orders, make any shipments, or otherwise receive any revenue from direct sales of its products through eCan-

dle's website. (Scott Decl., P7.) eCandle [*11] is invoiced directly by Hanna's for Hanna's products, and eCandle maintains and ships from its own product inventory, which includes the products of other companies. (Id.)

Fifth, although Hanna's maintains a website (www.hannascandles.com) that contains information about its products and how it can be contacted, the website is maintained in Arkansas, and no orders can be placed through the website. (Scott Decl., P14.) A link to the www.candlemart.com website operated by eCandle is available, but Hanna's does not sell its products directly to the public through the website. (Id.)

Hanna's has also explained its relationship with Wal-Mart. Its candles are sold through a total of seven Hanna's Candle Factory Outlet stores, located in Arkansas, Kansas, Missouri, and Oklahoma, for resale in Wal-Mart's stores. (Scott Decl., P7.) Hanna's does not direct the methods by which Wal-Mart distributes, markets, or sells the Fresh Preserves candle. (Id., P11.) It also does not provide promotional materials to Wal-Mart or any other retailers who purchase its Fresh Preserves candles. (Id., P15.)

BBW contends that by selling its candle in Ohio through Wal-Mart (and Kohl's and the Gooseberry [*12] Patch catalog), Hanna's is purposefully availing itself of the privilege of acting in Ohio under Ohio's long-arm statute. BBW also contends that Hanna's is subject to personal jurisdiction in Ohio because Hanna's sells its candles to gift shops in Ohio and its website lists a "Toll Free Hotline" and a separate number for "wholesale orders." According to BBW, the website is designed to place and process orders from all over the country and is easily accessible from Ohio.

The Court will first examine whether personal jurisdiction over Hanna's exists under *Ohio Rev. Code § 2307.382(A)(3)*. An act of trademark infringement is a tort. *See Hoover Co. v. Robeson Industries Corp., 904 F. Supp. 671, 673 (N.D. Ohio 1995)*. Further, an act of trademark infringement occurs where the sale of the infringing product occurs. *See LSI Industries, Inc. v. Hubbell Lighting, Inc., 64 F. Supp. 2d 705, 708 (S.D. Ohio 1999)*(stating that the locus of the injury caused by an act of patent or trademark infringement is the place where the infringing act occurs, which is the place where the sale of infringing products occurs). Hanna's Chief Financial Officer, John Scott, has acknowledged [*13] that Hanna's sells its Fresh Preserves candles to gift shops and small stores located in Ohio and that the candles are shipped to Ohio. Although Hanna's argues that it has not derived "substantial revenue" from these sales because they have sold only 492 units of the candle to Ohio purchasers, subsection (A)(3) does not require a nonresident

defendant to derive "substantial revenue" from the goods sold. *Compare Ohio Rev. Code § 2307.382(A)(4)*. Because Hanna's has sold the allegedly infringing products in Ohio and BBW has asserted causes of actions for the torts of trade dress infringement and unfair competition and misappropriation, the Court concludes that Hanna's is subject to personal jurisdiction under subsection (A)(3).

The Court also concludes that Hanna's is subject to personal jurisdiction under subsection (A)(1) because it transacts business in Ohio within the meaning of that section. The Supreme Court of Ohio has interpreted the phrase "transacting any business" broadly. *See Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc., 53 Ohio St. 3d 73, 559 N.E.2d 477, 480 (Ohio 1990), cert. denied, 499 U.S. 975, 113 L. Ed. 2d 717, 111 S. Ct. 1619 (1991)*. [*14] The phrase "transacting any business" means "to carry on business" or "to have dealings" and has a broader meaning than the word "contract." *See Goldstein v. Christiansen, 70 Ohio St. 3d 232, 638 N.E.2d 541, 544 (Ohio 1994)*. Furthermore, a physical presence in Ohio is not required for personal jurisdiction to exist over a nonresident defendant. *See id.*

Despite the fact that Hanna's sells its Fresh Preserves candle directly to retailers located in Ohio, it argues that these sales are *de minimis* and not enough to constitute the transaction of business for purposes of Ohio's long-arm statute. [5] Even if it is assumed that the sale of the Fresh Preserves candles to Ohio retailers alone does not constitute the transaction of business in Ohio because of the *de minimis* amount of sales, [6] personal jurisdiction may exercised over Hanna's under subsection (A)(1) based on the combination of the direct sales of the candle to Ohio retailers and the sales of the candle to Ohio residents through Wal-Mart. *See Morgan Adhesives Co. v. Sonicor Instrument Corp., 107 Ohio App. 3d 327, 668 N.E.2d 959, 962 (Ohio Ct. App. 9th Dist. 1995); cf. Hoover Co. v. Robeson Industries Corp., 904 F. Supp. 671, 674 (N.D. Ohio 1995)*; [*15] *Mellott v. Dico Co., 7 Ohio App. 3d 52, 454 N.E.2d 146, 149 (Ohio Ct. App. 9th Dist. 1982)*.

> 5  Hanna's also relies on a Sixth Circuit Court of Appeals case and two Ohio appellate cases to argue that it is not transacting business in Ohio within the meaning of Ohio's long-arm statute. The cases cited by Hanna's are distinguishable because the nonresident defendants in those cases were not selling their products to anyone located in Ohio. In *R.L. Lipton Distributing Co. v. Dribeck Importers, Inc., 811 F.2d 967 (6th Cir. 1987)*, the Sixth Circuit held that a nonresident defendant was not subject to personal jurisdiction in Ohio because it "maintained no offices or em-

ployees in Ohio, *accepted no orders from the state and made no deliveries there*" and its only contacts with Ohio consisted of occasional promotional mailings and one or two visits to Ohio over a five year period by its sales representatives. *811 F.2d at 968, 970* (emphasis added).

In *Sales Consultants v. Buehler Lumber Co., 79 Ohio App. 3d 289, 607 N.E.2d 94 (Ohio Ct. App. 8th Dist. 1992)*, an Ohio appellate court held that a Pennsylvania corporation was not subject to personal jurisdiction in Ohio even though it had telephone and fax communications with an Ohio corporation because it never transacted or solicited business within the state of Ohio, it had no office or place of business in Ohio, and it was not authorized to do business in Ohio. *See 607 N.E.2d at 97*. In *Powell v. Bethesda Hospital, Inc., 42 Ohio App. 3d 164, 537 N.E.2d 711 (Ohio Ct. App. 1st Dist. 1988)*, the plaintiff was required to submit to a physical examination which included the collection of a urine specimen. The urine specimen was collected by employees of Bethesda Hospital and forwarded to National Medical Services, Inc. ("NMS"), a Pennsylvania corporation, for testing. The specimen tested positive for the use of marijuana, and NMS forwarded that information to the plaintiff's employer in North Carolina. An Ohio appellate court held that NMS was not subject to personal jurisdiction in Ohio because it did not actively solicit business in Ohio, test specimens in Ohio, or own property or have an office in Ohio. *See 537 N.E.2d at 712*.

[*16]

6   The Court notes, however, that the Sixth Circuit in CompuServe rejected the district court's reliance on the *de minimis* amount of software sales--the nonresident defendant claimed he sold only $ 650 worth to 12 Ohio residents over three year period--as a basis for concluding that personal jurisdiction did not exist. *See 89 F.3d at 1265.* The Sixth Circuit stated that "it is the quality of the contacts and not their number or status, that determines whether they amount to purposeful availment." *Id.* (internal quotations omitted).

In *Morgan Adhesives*, Sonicor Instrument Corporation ("Sonicor"), a New York corporation with its principal place of business in New York, manufactured an ultrasonic cleaning system which it sold through a distributor incorporated in the state of North Carolina, Max Daetwyler Corporation ("Daetwyler"). Although Sonicor did not sell its products directly to anyone in Ohio, it acknowledged that approximately 3% of its products were distributed to Ohio through Daetwyler. The court of

appeals held that Sonicor transacted business in Ohio within [*17] the meaning of *Ohio Rev. Code § 2307.382(A)(1)* because approximately 3% of its products eventually went to Ohio after it placed its products in the stream of commerce. *See 668 N.E.2d at 962.* "Thus, Ohio appears to be a continuous market for the eventual 'landing' of Sonicor's products." [7] *Id.*

7   In an earlier case decided by the Ninth District Court of Appeals, the court held that a plaintiff's bare assertion that a nonresident defendant "manufactured a product which went into the stream of commerce, without more, is insufficient to establish a cause for the granting of *in personam* jurisdiction" over the defendant. *See Mellott v. Dico Co., 7 Ohio App. 3d 52, 454 N.E.2d 146, 149 (Ohio Ct. App. 9th Dist. 1982)*(finding that plaintiffs did not offer evidence of minimal contacts by defendant that could have resulted in a reasonable expectation on defendant's part that its product would be used in Ohio); *see also Hoover Co. v. Robeson Industries Corp., 904 F. Supp. 671, 674 (N.D. Ohio 1995)*(stating that nonresident defendant must do some act or consummate some transaction within Ohio in addition to merely placing a product into the stream of commerce that may forseeably flow into Ohio). To the extent that *Mellott* still applies, that case is distinguishable because, unlike the defendants in *Mellott* (and *Hoover*), Hanna's also directly sells its candles to retailers located in Ohio.

[*18]   The Court further concludes that personal jurisdiction over Hanna's may exist under *Ohio Rev. Code § 2307.382(A)(4). See Schwanger v. Munchkin, Inc., 1999 U.S. App. LEXIS 25038*, No. 99-1049, 1999 WL 820449, at *4-5 (Fed. Cir. Oct. 7, 1999)*(holding that an Ohio district court has personal jurisdiction over nonresident defendant on the basis of *Ohio Rev. Code § 2307.382(A)(4)* even though defendant did not sell its products directly to anyone in Ohio). Subsection (A)(4) provides that a court may exercise personal jurisdiction over a nonresident defendant who causes tortious injury in Ohio by an act or omission outside Ohio if the defendant derives substantial revenue from goods used or consumed in Ohio. Because BBW claims that Hanna's sales activity outside Ohio has caused tortious injury--infringement--inside Ohio, the issue is whether Hanna's derives substantial revenue from goods used or consumed in Ohio. *See Hoover, 904 F. Supp. at 673*.

In *Schwanger*, the plaintiffs, who were residents of Ohio, held a patent for a medical dispenser for baby bottles. They brought a patent infringement suit against Munchkin, Inc. and retailers Wal-Mart and Meijer. Munchkin was a California [*19] corporation with its

principal place of business in California that manufactured and sold medicine dispensers for baby bottles. Munchkin sold its dispenser to retailers Meijer and Wal-Mart for resale in stores throughout the United States, including stores in Ohio, but it did not make any sales to any Ohio residents itself. Munchkin had no office, employees, telephone numbers, or assets in Ohio and had no other contact with Ohio. Based on these facts, the district court granted Munchkin's motion to dismiss for lack of personal jurisdiction.

Applying Ohio law, the Federal Circuit Court of Appeals reversed the district court. The Federal Circuit stated that Ohio courts have a great deal of flexibility and latitude in determining what constitutes "substantial revenue" and that its analysis of the plain meaning and application by Ohio courts of subsection (A)(4) led it to conclude that personal jurisdiction could be exercised over a nonresident manufacturer with no direct ties to Ohio. *See* 1999 WL 820449, at *3-4. The court further stated: "It is our view that any meaningful application of the 'substantial revenue' requirement in an action where the plaintiff has alleged [*20] all elements of subsection (4), including sales of the defendant's goods in Ohio, requires at a minimum an evidentiary hearing. Only in this manner can the plaintiff be afforded sufficient opportunity, through discovery, to present facts (if possible) meeting the court's discretionary 'substantial revenue' threshold." *Id.* at *5. Thus, even if it is assumed that Ohio Rev. Code §§ 2307(A)(1) and (3) do not subject Hanna's to personal jurisdiction in Ohio, BBW is entitled to be afforded sufficient opportunity, through discovery, to present facts showing that Hanna's derives "substantial revenue" from Wal-Mart's sales of the Fresh Preserves candle in Ohio.

## 2. Due Process Clause

Having concluded that Hanna's is subject to personal jurisdiction in Ohio under Ohio's long-arm statute, the Court will now examine whether the exercise of personal jurisdiction would offend the constitutional limits of due process under the *Fourteenth Amendment to the United States Constitution*. Two types of jurisdiction may be exercised over a nonresident defendant: specific and general. Specific jurisdiction exists if the subject matter of the lawsuit arises out of or is related to the defendant's [*21] contacts with the forum. *See Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co., Ltd., 91 F.3d 790, 793 (6th Cir. 1996)*. General jurisdiction exists when a defendant's "continuous and systematic" conduct within the forum state renders that defendant amenable to suit in any lawsuit brought against it in the forum state. *See id.* BBW does not contend that Hanna's has engaged in "continuous and systematic" conduct in Ohio such as would render Hanna's generally amenable to suit in Ohio. Rather,

BBW contends that its claims against Hanna's arise out of Hanna's contacts with Ohio.

In this context, the crucial federal constitutional inquiry is whether the nonresident defendant has purposefully established "minimum contacts" with the forum state. *See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985)*(quoting *International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)*. Once it has been decided that the defendant purposefully established minium contacts with the forum state, these contacts are considered in light of other factors to determine whether the assertion of personal jurisdiction would comport [*22] with "fair play and substantial justice." *471 U.S. at 476* (quoting *International Shoe*, 325 U.S. at 320).

The Sixth Circuit has established three criteria for making these determinations:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have substantial enough connection within the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Machine Co. v. Mohasco Industries, Inc., 401 F.2d 374, 381 (6th Cir. 1968)*.

### a. The Purposeful Availment Requirement

The Sixth Circuit has stated that the question of whether a defendant has purposefully availed itself of the privilege of acting in the forum state or causing a consequence in the forum state is "the *sine qua non for in personam* jurisdiction." *See Mohasco, 401 F.2d at 381-82*. The purposeful availment requirement is satisfied when the defendant's contacts with the forum state "proximately [*23] result from actions by the defendant himself that create a 'substantial connection' with the forum State," and when the defendant's conduct and connection with the forum are such that he "should reasonably anticipate being haled into court there." *Burger King, 471 U.S. at 474-75* (quoting *World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980))*. Courts require purposeful availment to insure that "random," "fortuitous," or "attenuated" contacts do not cause a defendant to be haled into a jurisdiction. *See CompuServe, 89 F.3d at 1264* (quoting *Burger King, 471 U.S. at 475*).

Jurisdiction may not be avoided merely because the defendant did not physically enter the forum state. *See Burger King, 471 U.S. at 476.* As the Supreme Court has stated: "So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." *Id.* (quoting *Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774-75, 79 L. Ed. 2d 790, 104 S. Ct. 1473 (1984)).* [*24]

BBW contends that Hanna's has purposely availed itself of the privilege of acting in Ohio or causing a consequence in Ohio because (1) it sells its Fresh Preserves candles to national retailers (Wal-Mart and Kohl's) that sell the candles to Ohio residents; (2) it sells its candles to gift shops and small stores located in Ohio; (3) it operates a website (www.hannascandles.com) that lists a "Toll Free Hotline" and a separate number for "wholesale orders"; (4) the candles are being sold by Gooseberry Patch, a distributor of mail-order catalogs based in Delaware, Ohio, through its catalogs and through its website (www.gooseberrypatch.com); and (5) the candles are being sold through a website (www.candlemart.com) easily accessible in Ohio.

Hanna's contends that BBW has failed to allege any facts showing that it has substantial contacts with Ohio to indicate a purposeful direction of activity toward Ohio. Relying on *R.L. Lipton Distributing Co. v. Dribeck Importers, Inc., see infra 811 F.2d 967,* note 5, Hanna's maintains that the sales of it Fresh Preserves candles to Wal-Mart and Kohl's do not show that it is purposefully availing itself of the privilege of acting in Ohio because these sales are [*25] made outside Ohio and it has no control over where Wal-Mart and Kohl's decide to sell the candles. Further, Hanna's does not provide promotional materials to Wal-Mart or Kohl's, and it offers no input as to how Wal-Mart and Kohl's distribute, market, or sell the candles.

Hanna's also contends that sales to gift shops and other stores in Ohio, including Gooseberry Patch, are *de minimis* and not enough to establish personal jurisdiction over it and that BBW incorrectly relies on sales made through eCandle's website, www.candlemart.com to establish jurisdiction. Hanna's points out that it does not run eCandle and that it does not process orders, make any shipments, or otherwise receive any revenue from sales of its products through eCandle's website. Finally, Hanna's relies on *Mink v. AAAA Development LLC, 190 F.3d 333 (5th Cir. 1999), Stern's Department Stores, Inc. v. Herbert Mines Assocs., 1999 U.S. Dist. LEXIS 10805,* No. C-1-98-844 (S.D. Ohio July 8, 1999), and *Krutowsky v. Simonson, 109 Ohio App. 3d 367, 672 N.E.2d 219 (Ohio Ct. App. 9th Dist. 1996),* to argue that advertising on a national scale does not subject a party to jurisdiction

[*26] simply because the advertisement reaches the forum state and that, therefore, its operation of a website does not subject it to personal jurisdiction in Ohio.

In *Mink*, the Fifth Circuit Court of Appeals adopted the test set forth in *Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997),* to determine whether personal jurisdiction could be exercised over a nonresident defendant whose website was accessible by residents of the forum state. The *Zippo* decision categorized internet use into a spectrum of three areas. At the one end of the spectrum, personal jurisdiction is proper because the defendant clearly does business over the internet by entering into contracts with residents of other states which "involve the knowing and repeated transmission of computer files" over the internet. *190 F.3d at 336* (quoting *Zippo, 952 F. Supp. at 1124).* At the other end of the spectrum, personal jurisdiction is not proper because the defendant merely establishes a passive website that does nothing more than provide information to users. *See id.* In the middle of the spectrum, the defendant has a website that allows a [*27] user to exchange information with a host computer. In this middle ground, "the exercise of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information" that occurs on the website. *Id.* (quoting *Zippo, 952 F. Supp. at 1124).*

The nonresident defendant's website examined by the Fifth Circuit provided users with a printable mail-in order form, its toll-free telephone number, a mailing address, and an electronic mail ("e-mail") address, but orders were not taken through the website. The defendant did not have any direct contact with the forum state. The Fifth Circuit held that "the presence of an electronic mail access, a printable order form, and a toll-free phone number on a website, without more, is insufficient to establish personal jurisdiction. Absent a defendant doing business over the Internet or sufficient interactivity with residents of the forum state, we cannot conclude that personal jurisdiction is appropriate." *190 F.3d at 337.*

In *Sterns*, the district court stated that the maintenance of a website which can be accessed by Ohio residents does not constitute the regular solicitation of business [*28] in Ohio. *See 1999 U.S. Dist. LEXIS 10805,* at *25. In *Krutowsky*, an Ohio appellate court stated that a person does not subject himself to Ohio's jurisdiction simply by advertising in a magazine with a national circulation. *See 672 N.E.2d at 222.*

Although it does not engage in advertising specifically directed at Ohio residents, Hanna's sells the allegedly infringing candles directly to Ohio retailers, and it sells the candles to national retailers who sell the candles across the United States, including Ohio. It also operates a website which advertises a toll-free order hotline, pro-

vides information for placing wholesale orders, allows customers to join its e-mail list, and displays a link for ordering on-line at candlemart.com. Under these circumstances, the Court concludes that Hanna's should have reasonably anticipated being haled into court in Ohio and that it has purposely availed itself of the privilege of acting in Ohio or causing a consequence in Ohio. *See Schwanger*, 1999 WL 820449, at *6 (finding that nonresident defendant's continuous shipment into the forum state through an established distribution channel established [*29] purposeful minimum contacts necessary for personal jurisdiction); *Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1567-68 (Fed. Cir. 1994)*(same); *Morgan Adhesives, 668 N.E.2d at 962-63* (finding that nonresident defendant could reasonably anticipate being haled into court in Ohio because approximately 3% of its products eventually distributed to Ohio); *cf. Hoover, 904 F. Supp. at 674* (stating that nonresident defendant must do some act or consummate some transaction within Ohio in addition to merely placing a product into the stream of commerce that may forseeably flow into Ohio).

#### b. Whether The Cause Of Action Arises From Hanna's Contacts With Ohio

The Court also concludes that BBW's claims against Hanna's arise from Hanna's contacts with Ohio. BBW's trade dress infringement and unfair competition claims arise from the sale of the allegedly infringing candles in Ohio.

#### c. The Reasonableness Requirement

The Court will next consider whether the acts of Hanna's or the consequences caused by Hanna's have a substantial enough connection with Ohio to make the exercise of jurisdiction over Hanna's reasonable. [*30] When considering whether exercising personal jurisdiction over a defendant would be reasonable, *i.e.*, whether it would "comport with traditional notions of fair play and substantial justice," a court must consider several factors. *Reynolds, 23 F.3d 1110, 1117* (quoting *Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 113, 94 L. Ed. 2d 92, 107 S. Ct. 1026 (1987))*. These factors include, "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies." *American Greetings Corp. v. Cohn, 839 F.2d 1164, 1169-70 (6th Cir. 1988)*(citing *Asahi Metal, 480 U.S. at 113*). If the first two factors of the *Mohasco* test have been met, then an inference arises that the third factor is also present. *See CompuServe, 89 F.3d at 1268*.

Ohio has a strong interest in discouraging trademark infringement within the state and in seeing that its residents' property interests are protected. Although there

will be some burden on Hanna's litigating in Ohio, this burden does not outweigh [*31] BBW's and Ohio's interests and there is no evidence that Hanna's will be unable to defend itself in Ohio. Accordingly, the Court concludes that the exercise of personal jurisdiction over Hanna's is reasonable.

### III. Motion to Stay or Transfer Venue

The Court will now address Hanna's motion to stay or transfer venue to the United States District Court for the Western District of Arkansas. Defendants first argue that under the *Colorado River* abstention doctrine this action should be stayed pending the resolution of a lawsuit filed by Hanna's against BBW on November 4, 1999 in Arkansas. Under the *Colorado River* abstention doctrine, a federal court may abstain from deciding a federal court action in deference to a pending state proceeding in certain inappropriate circumstances. *See Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817-18, 47 L. Ed. 2d 483, 96 S. Ct. 1236 (1976)*. Despite the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," *id. at 817*, considerations of judicial economy and federal-state comity may justify abstention in situations involving the contemporaneous [*32] exercise of jurisdiction by state and federal courts. *See Romine v. CompuServe Corp., 160 F.3d 337, 339 (6th Cir. 1998)*.

On October 25, 1999, BBW, through counsel, sent a cease and desist letter to Wal-Mart and Hanna's. (Colucci Aff., Ex. 1.) The letter alleged that the trade dress of the Fresh Preserves candle infringed the trade dress of BBW's Nature's Preserves candle and stated that BBW's candle was the subject of three pending design patent applications. (*Id.*) The letter also notified defendants that BBW would take further action if a response was not received by October 29, 1999. (*Id.*)

After defendants did not respond to its letter, BBW sent a second letter to defendants stating that "if we do not receive a satisfactory response from you by the close of business tomorrow, November 3, 1999, we shall be forced to take all appropriate further action to protect Bath & Body Works' rights, including the institution of legal proceedings." (Colucci Aff., Ex. 2)(emphasis in original). On November 3, 1999, Wal-Mart responded to BBW's letters and stated that Hanna's would be handling the matter. (*Id.*, Ex. 3.) On the same day, Hanna's counsel sent a letter [*33] to BBW stating:

> I would appreciate it if you would provide assurances within five (5) days from the date of this letter that Bath & Body Works will cease further pursuit of these meritless claims. I hope that a quick and amicable resolution with respect to this

matter can be reached, and I look forward
to receiving your response.

(*Id.*, Ex. 4.)

On the next day, Hanna's filed suit against BBW in
the Circuit Court of Washington County, Arkansas.
(Defs.' Mot. to Stay, doc. 8, Ex. C.) The complaint al-
leges tortious interference by BBW of the contractual
relationship between Hanna's and Wal-Mart. (*Id.*) On
November 5, 1999, BBW filed this action.

Before the *Colorado River* abstention doctrine may
be applied, a court must first determine that the concur-
rent state and federal actions are actually parallel. *See
Romine, 160 F.3d at 339*. In deciding whether a state
action is parallel for abstention purposes, a court must
compare the issues in the federal action to the issues ac-
tually raised in the state court action, not those that might
have been raised. *See Baskin v. Bath Township Bd. of
Zoning Appeals, 15 F.3d 569, 572 (6th Cir. 1994)*. [*34]
Exact parallelism is not required; it is enough if the is-
sues in the two proceedings are substantially similar. *See
Romine, 160 F.3d at 340*.

Defendants argue that the Arkansas state action and
this action are parallel proceedings because the parties
and the issues involved are substantially similar. Defen-
dants maintain that in order for Hanna's to prevail on its
tortious interference with contract claim against BBW,
Hanna's must prove that BBW's actions were improper.
Defendants further maintain that in order to decide
whether BBW's actions were improper, the merits of
BBW's trade dress infringement claims must be exam-
ined. Thus, "it is the merits of the trade dress infringe-
ment claims made by BBW against Wal-Mart [and
Hanna's] that must be adjudicated by the state court in
Arkansas to determine whether Hanna's cause of action
is ultimately justified and actionable." (Defs.' Mot. to
Stay, doc. 8, p. 5.)

BBW responds that the Arkansas state action and
this action involve different parties, different claims,
different elements of proof, different governing law, and
different relief. BBW first points out that Wal-Mart is
not a party to the Arkansas state action even [*35]
though it is a necessary party to any adjudication of
BBW's trade dress infringement claims.

BBW next maintains that Hanna's must establish the
following in order to support its claim of tortious inter-
ference: (1) the existence of a valid contractual relation-
ship or business expectancy with Wal-Mart; (2) knowl-
edge of the relationship or expectancy by BBW; (3) im-
proper intentional interference inducing or causing a
breach or termination of the relationship or expectancy;
and (4) resultant damage to Hanna's. In this action, how-

ever, BBW must prove that its trade dress in the Fresh
Preserves candle can be protected either because it is
inherently distinctive or has acquired secondary mean-
ing. It must then demonstrate a likelihood of confusion
between its trade dress and Hanna's.

BBW next argues that Hanna's claim of tortious in-
terference in the Arkansas state action was premature
and not ripe for litigation because it cannot be decided
until this Court has adjudicated the trade dress rights of
the parties, such issue not having been raised by the par-
ties in the state court action. BBW also notes that it seeks
to amend the complaint to add a patent infringement
claim and that jurisdiction [*36] for this claim lies ex-
clusively in the federal courts.

The Court concludes that the Arkansas state action
and this action case do not possess the required identity
of parties and issues for a number of reasons. First, Wal-
Mart is a necessary party to the adjudication of BBW's
trade dress infringement claims, but it is not a party to
the state action. Second, the theories of relief in the two
actions are completely different. Even if it is shown in
the state action that Hanna's has infringed BBW's trade
dress rights, BBW will still have to pursue a damages
claim against Hanna's and will still have to prove its
trade dress infringement claim against Wal-Mart. Third,
the issues of whether BBW's trade dress is protected and
whether there is a likelihood of confusion may be rele-
vant to BBW's defense and may be ruled upon in the
state action, but they are not necessarily determinative of
that action. Finally, BBW's claims against Wal-Mart and
Hanna's are not predicated on the same alleged material
facts as Hanna's claims against BBW.

Even if it is assumed that the two actions are parallel
proceedings, the factors used to decide whether to defer
to the concurrent jurisdiction of a state [*37] court do
not weigh in favor of abstention. *See Romine, 160 F.3d
at 340-41*. First, the state court has not assumed jurisdic-
tion over any res or property. Second, the federal forum
is not less convenient for the parties. Third, abstention
will not necessarily avoid piecemeal litigation. Fourth,
jurisdiction over the parties was obtained within days of
each other. Fifth, the source of governing law for BBW's
claims is federal and Ohio law. Sixth, the Arkansas state
court cannot grant BBW complete relief. Seventh, both
actions are at equivalent stages. Eighth, the Arkansas
court will not have jurisdiction over BBW's proposed
patent infringement claims.

Defendants next argue that this action should be
transferred to the Western District of Arkansas pursuant
to *28 U.S.C. § 1404*. Section 1404(a) provides that "for
the convenience of parties and witnesses, in the interest
of justice, a district court may transfer any civil action to

2000 U.S. Dist. LEXIS 20168, *

any other district or division where it may have been brought." *28 U.S.C. § 1404(a)*.

The factors to be considered under *§ 1404(a)* are similar to those weighed by the court in determining *forum* **[*38]** *non conveniens* motions; however, transfers may be granted "upon a lesser showing of inconvenience." *Norwood v. Kirkpatrick, 349 U.S. 29, 32, 99 L. Ed. 789, 75 S. Ct. 544 (1955)*. The moving party has the burden of demonstrating that the case should be transferred to a different forum. *See Jumara v, State Farm Ins. Co., 55 F.3d 873, 879-80 (3d Cir. 1995); Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 218 (2d Cir. 1978); Time, Inc. v. Manning, 366 F.2d 690, 698 (5th Cir. 1966); Armco, Inc. v. Reliance National Insurance Co., 1997 U.S. Dist. LEXIS 7880, No. C-1-96-1149, 1997 WL 311474, at *2 (S.D. Ohio May 30, 1997)*. A motion to transfer venue under *§ 1404(a)* is not intended merely to shift the burden of proceeding. *See Bacik v. Peek, 888 F. Supp. 1405, 1415 (N.D. Ohio 1993); AMF, Inc. v. Computer Automation, Inc., 532 F. Supp. 1335, 1345 (S.D. Ohio 1982)*. It "provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient." *Van Dusen v. Barrack, 376 U.S. 612, 645-46, 11 L. Ed. 2d 945, 84 S. Ct. 805 (1964)*.

The first step **[*39]** is to determine whether the suit could have been brought in the proposed transferee forum. *See Hoffman v. Blaski, 363 U.S. 335, 343-44, 4 L. Ed. 2d 1254, 80 S. Ct. 1084 (1960); Martin v. Stokes, 623 F.2d 469, 474 (6th Cir. 1980)*. Once the defendant demonstrates that jurisdiction over the parties can be obtained in the proposed transferee forum, a court must make an "individualized, case-by-case evaluation of convenience and fairness." *Van Dusen, 376 U.S. at 622*. The court should consider "the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Moses v. Business Card Express, Inc., 929 F.2d 1131, 1137 (6th Cir. 1991)*(quoting *Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 30, 101 L. Ed. 2d 22, 108 S. Ct. 2239 (1988))*, cert. denied, *502 U.S. 821 (1991)*.

The private interests of the parties include:

> The relative ease of access to sources of proof, availability of compulsory **[*40]** process for attendance of the unwilling, and the cost of obtaining attendance of the willing, witnesses . . . and all other practical problems that make trial of a case easy, expeditious, and inexpensive.

*Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 91 L. Ed. 1055, 67 S. Ct. 839 (1947)*. Factors to be weighed in considering the public interest include docket congestion, the burden a trial would have on a jurisdiction with no connection to the litigation, and the familiarity of the court with the controlling law. *Id. at 508-09*.

What weight to give the plaintiff's choice of forum is a question that has produced considerable disagreement. Clearly, the plaintiff's choice of forum is not by itself dispositive. When proceeding under *§ 1404(a)*, by definition venue properly lies in the district where plaintiff filed suit and in the district the defendant champions. A court must look to all the factors identified by the statute and by the Supreme Court in *Gilbert* and not limit itself solely to a determination of whether the other factors outweigh the plaintiff's choice of forum.

There is no one formulation that courts consistently follow when **[*41]** considering the weight to be given a plaintiff's choice of forum. *See* Wright & Miller, *Federal Practice and Procedure* § 3848 n.4. ("The courts have developed a bewildering variety of formulations on how much weight is to be given to plaintiff's choice of forum.") While the plaintiff's choice of forum is a factor to be considered, *see Norwood, 349 U.S. at 32*, there is a wide divergence of opinion as to how much weight to give plaintiff's choice of forum. *See* Wright & Miller, *Federal Practice and Procedure* § 3848 n.4-16; 1 *Moore's Federal Practice*, P0.145[5] at 1616. Judges of the Southern District of Ohio have held both that a plaintiff's choice of forum is "given considerable weight and the balance of convenience, considering all relevant factors, must be strongly in favor of a transfer before such will be granted," *Artisan Development v. Mountain State Development Corp., 402 F. Supp. 1312, 1314 (S.D. Ohio 1975); United States v. The Boeing Co., 1998 U.S. Dist. LEXIS 22456, No. C-1-95-375, 1998 WL 54976, at *1 (S.D. Ohio Jan. 21, 1998)*, and that a plaintiff's choice of forum is not given considerably greater weight than other factors. **[*42]** *See Neff Athletic Lettering v. Walters, 524 F. Supp. 268, 272 (S.D. Ohio 1981); Mead Corp. v. Boldt, 508 F. Supp. 193, 198 (S.D. Ohio 1981)*.

The Court has also held that "a trial court retains discretion to determine the weight to be given the plaintiff's choice of forum on a case-by-case basis." *Wendy's International, Inc. v. Suburpia Submarine Sandwich Shops of Milwaukee, Inc.*, C-2-84-1243 (S.D. Ohio Oct. 11, 1985)(unreported op. at p. 7). When a cause of action has little connection with the forum, plaintiff's choice of forum is entitled to no greater weight than any other factor. *See Mead Corp., 508 F. Supp. at 198* (transferred because none of the actionable conduct occurred in the forum selected by plaintiff and most of the witnesses were located in the transferee forum).

Hanna's argues that this case should be transferred to the Western District of Arkansas because all potential witnesses with respect to defendants reside in Arkansas and would be greatly inconvenienced if the case remained in Ohio. For example, Deborah Richeson is the buyer for Wal-Mart of the Fresh Preserves candles, and she resides in Bentonville, Arkansas. [*43] (Richeson Decl., PP1, 4.) Further, the potential witnesses for Hanna's including, Burt Hanna (President of Hanna's), Joe Williams (Sales Manager for Hanna's), and John Scott (Chief Financial Officer of Hanna's), all reside in Arkansas. (Scott Decl., P4.) Hanna's also argues that this case should be transferred because all relevant records or documents in the custody or control of defendants are located in Arkansas and both Hanna's and Wal-Mart have their principal places of business in Arkansas.

BBW responds that transferring this case would merely shift the balance of conveniences because it has at least as many witnesses as defendants and that none of these witnesses reside in Arkansas. BBW also states that its documents are located in Ohio and that the public interest favors Ohio because the locus of the injury and damage to BBW is in Ohio.

The Court concludes that the balance of convenience does not favor transferring this action to the Western District of Arkansas. First, BBW's choice of Ohio as the forum is entitled to some weight because its claims against defendants arise from conduct which has occurred in Ohio. An act of trade dress infringement occurs where the sale of the [*44] infringing product occurs. Accordingly, BBW's causes of action against defendants arise from the sales of Hanna's Fresh Preserves candles in Ohio by Hanna's and Wal-Mart.

Second, Arkansas is not necessarily the more convenient forum for the witnesses who are expected to testify at trial. Courts normally give considerable weight to the convenience of the witnesses. *See, e.g., Picker International, Inc. v. Travelers Indemnity Co., 35 F. Supp. 2d 570, 573 (N.D. Ohio 1998)*. However, the convenience of the witnesses does not weigh heavily in the balance when there are witnesses on both sides of the case who will be inconvenienced depending on which forum is selected. *Id.; AMF, 532 F. Supp. at 1341*. Hanna's has identified four witnesses who reside in Arkansas. BBW contends that it will have at least four witnesses, including experts, and that none of these witnesses reside in Arkansas. Although BBW has not identified its witnesses, it appears likely that a number of nonparty witnesses will be from Ohio or from outside Arkansas.

Third, the location of documentary evidence is not a factor because documents "may easily be sent by mail, copied, or even faxed [*45] to a remote location." *Picker International, 35 F. Supp. 2d at 574*. Fourth, the famili-

arity of the judges in the competing forums with the controlling law is not a factor because BBW's Lanham Act claim involves federal law and BBW's state law claims are based on Ohio law. Fifth, there is no evidence that the relative financial strength of the parties and their respective abilities to conduct the litigation in Ohio or in Arkansas weigh in favor of or against transfer. *See AMF, 532 F. Supp. at 1344; Garrett v. Ruth Originals Corporation, 456 F. Supp. 376, 385 (S.D. Ohio 1978)*.

Finally, relative docket congestion only slightly weighs in favor of transfer. Statistics found in the Federal Court Management Statistics 1998, U.S. District Court Judicial Caseload Profile, indicate that there were 441 total case filings per judgeship in the Southern District of Ohio in 1998. The median time from filing to disposition in a civil case was 11 months. For the same year, there were 406 case filings per judgeship in the Western District of Arkansas. The median time from filing to disposition in a civil case was 8 months.

## IV. Motion to Amend Complaint

### [*46] A. Standard of Review

*Rule 15(a)* permits a party to amend the complaint after a responsive pleading has been filed only by leave of court, but requires that such leave "be freely granted when justice so requires." *Fed. R. Civ. P. 15(a)*. That standard has been construed by the Supreme Court:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc.--the leave sought should be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court[.]

*Foman v. Davis, 371 U.S. 178, 182, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962)*.

In addressing the issue of "futility" in the context of motions to amend, the Sixth Circuit has stated that "it is well settled that the district court may [*47] deny a mo-

tion for leave to amend a complaint if such complaint, as amended, could not withstand a motion to dismiss." *Neighborhood Dev. Corp. v. Advisory Council on Historic Preservation, 632 F.2d 21, 23 (6th Cir. 1980); see also Sinay v. Lamson & Sessions Co., 948 F.2d 1037, 1041 (6th Cir. 1991).* A court will not ordinarily consider the merits of a proposed amended complaint in ruling on a motion for leave to amend unless it appears to be frivolous. *See Madison Fund, Inc. v. Denison Mines Ltd., 90 F.R.D. 89, 91 (S.D.N.Y. 1981); Key Pharmaceuticals, Inc. v. Lowey, 54 F.R.D. 447, 449 n.5 (S.D.N.Y. 1972).* Normally, the merits of a complaint are best resolved through a motion to dismiss or a motion for summary judgment. *See WIXT Television, Inc. v. Meredith Corp., 506 F. Supp. 1003, 1010 (N.D.N.Y. 1980).* If there is no set of facts which could be proved under the amendment which would constitute a valid and sufficient claim, however, leave should be denied. *See Cooper v. American Employers' Ins. Co., 296 F.2d 303, 307 (6th Cir. 1961).*

**B. Discussion**

BBW seeks leave to amend the complaint to include additional claims of design patent infringement and trademark infringement. BBW has attached a copy of the proposed amended complaint to its motion. Defendants Wal-Mart and Hanna's argue that leave should be denied because they contend that BBW's proposed trademark infringement claim could not withstand a motion to dismiss and that BBW's proposed patent infringement claim could not withstand a motion for summary judgment.

Although defendants maintain that some courts have found motions for leave to amend to be futile where they could not survive motions for summary judgment and have cited a Sixth Circuit Court in support of this proposition, the Sixth Circuit has recently held that "the test for futility . . . does not depend on whether the proposed amendment could potentially be dismissed on a motion for summary judgment; instead, a proposed amendment is futile only if it could not withstand a *Rule 12(b)(6)* motion to dismiss." *Rose v. Hartford Underwriters Ins. Co., 203 F.3d 417, 421 (6th Cir. 2000)* (finding that proposed amendment was not futile because it could withstand a *Rule 12(b)(6)* motion to dismiss). Accordingly, the Court will not consider whether BBW's proposed patent infringement claim could survive a motion for summary judgment.

With respect to BBW's proposed trademark [*48] claim, defendants state that courts have identified four general categories of distinctiveness for terms used in trademarks: (1) generic; (2) descriptive; (3) suggestive; and (4) arbitrary or fanciful. Defendants state that a generic term is one which is commonly used as the name or description of a kind of goods and cannot become a

trademark under any circumstances. Further, a descriptive term specifically describes a characteristic or ingredient of an article; only when a descriptive term has acquired secondary meaning can it become a valid trademark. Defendants also state that the purpose behind refusing to allow generic or descriptive words to become trademarks is because of the danger of depleting the general vocabulary available to all for the description and denomination of articles of commerce.

Relying on *Enrique Bernat F., S.A. v. Guadalajara, Inc., 210 F.3d 439 (5th Cir. 2000),* defendants contend that "the term 'preserves' in BBW's NATURE'S PRESERVES mark is not merely descriptive of the goods, but is actually generic because it is actually used to describe the goods themselves, *i.e.,* preserve candles. It therefore cannot function as a trademark under [*49] any circumstances." (Defs.' Mem. in Opp'n, doc. 26, p. 4.)

BBW responds that defendants have correctly identified the basis of the proposed claim of trademark infringement as involving whether a likelihood of confusion exists between BBW's use of Nature's Preserves and defendants' use of Fresh Preserves, where both are used for identical goods. BBW contends, however, that defendants' reasoning is flawed because they "take the unwarranted position that 'preserves', as used in the context of the parties' goods, immediately brings to mind preserve candles." (Pl.'s Reply, doc. 27, p. 10.) BBW further contends that "perhaps if the parties manufactured jellies, jams and actual fruit preserves, defendants' point might be germane, but there is no basis for the supposition advanced by defendants that use of the word 'preserves' immediately calls to mind 'preserve candles.'" (*Id.*)

In *Enrique Bernat,* the goods at issue were lollipops and the issue was whether a likelihood of confusion existed between the marks "Chupa Chups" and "Chupa Gurts." The Fifth Circuit held that neither party could claim exclusive rights to the word "chupa" because it was a Spanish word for lollipop and that [*50] the likelihood of confusion analysis had to be conducted using the marks "Chups" and "Gurts." *See 210 F.3d at 444-45.*

The Court concludes that the reasoning used by the Fifth Circuit in *Enrique Bernat* does not support the proposition that the term "preserves" is a generic term which is commonly used to describe candles which bear the appearance of fruit preserves. Accordingly, the Court concludes that defendants' have not shown that BBW's proposed trademark claim would be futile.

**V. Conclusion**

For the reasons stated above, the Court HOLDS that BBW's May 30, 2000 motion to amend complaint (doc. 22) is GRANTED and that Hanna's December 20, 1999

2000 U.S. Dist. LEXIS 20168, *

motion to dismiss (doc. 6); Hanna's December 28, 1998 motion to stay or, in the alternative, transfer venue (doc. 8); and Hanna's December 28, 1999 amended motion to dismiss (doc. 9) are DENIED.

Edmund A. Sargus, Jr.

United States District Judge



MOREL ACOUSTIC, Ltd., Plaintiff, -vs- MOREL ACOUSTICS USA, Inc., et al.,
**Defendants.**

**Case No. 3-:04-CV-348**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
OHIO, WESTERN DIVISION**

*2005 U.S. Dist. LEXIS 32864*

**September 7, 2005, Decided
September 7, 2005, Filed**

**COUNSEL: [\*1]** For Morel Acoustic LTD, Plaintiff:
Bernard Joseph Schaeff, Michael G Frey, Killworth,
Gottman, Hagan & Schaeff, Dayton, OH.

For Moral Acoustics USA Inc, Mikhael Shabani, Defendants: Chad William Main, Meckler, Bulger & Tilson,
Chicago, il.

**JUDGES:** THOMAS M. ROSE, UNITED STATES
DISTRICT JUDGE.

**OPINION BY:** THOMAS M. ROSE

**OPINION**

**ENTRY AND ORDER OVERRULING DEFEN-
DANTS' MOTION TO DISMISS (Doc. # 10)**

This Complaint is brought by Plaintiff Morel Acoustic, Ltd. (Morel) against Defendant Morel Acoustics
USA, Inc. ("Morel USA") and Defendant Mikhael Shabani ("Shabani"). Morel is an Israeli Corporation, Morel
USA is a Massachusetts Corporation and Shabani is a
citizen of Massachusetts and Morel USA's President.

Count I of Morel's Complaint is a federal claim for
trademark infringement in violation of *15 U.S.C. § 1114*
and *§§ 1116-18*. The basis of Count I is Morel USA's use
of the "MOREL" name and mark.

Count II is for violation of the federal Anticybersquatting Consumer Protection Act, *15 U.S.C. § 1125(d)*.
The basis of Count II is Morel USA's registration and use
of the <morelusa.com> and <morelacoustics.com> domain names.

Count III of Morel's [\*2] Complaint is for false designation of origin in violation of the Lanham Act, *15
U.S.C. § 1125(a)*. The basis of Count III is Morel USA's
use of the MOREL name in connection with various
pieces of electronic equipment.

Count IV of Morel's Complaint is an Ohio common
law trademark infringement and unfair competition
claim. Count IV is a state-law claim based upon the same
alleged federal law violations that are set forth in Counts
I, II and III.

Now before the Court is Morel USA and Shabani's
(collectively the "Defendants") Motion To Dismiss.
(Doc. # 10.) The bases for this Motion are that all Counts
of Morel's Complaint are barred by the doctrine of laches
as applied to the applicable statute of limitations, that
this Court does not have personal jurisdiction and that
venue in this Court is improper. Each will be addressed
in turn.

**LACHES**

The Defendants first argue that all Counts of Morel's
Complaint should be dismissed pursuant to *Fed. R. Civ.
P. 12(b)(6)* based upon the doctrine of laches and the
applicable statute of limitations. Morel responds that
neither the doctrine of laches nor any statute of limitations [\*3] provide a basis to dismiss its Complaint pursuant to *Rule 12(b)(6)*. The standard of review will first
be set forth followed by an analysis of the argument.

Standard of Review

The purpose of a *Rule 12(b)(6)* motion to dismiss is
to allow a defendant to test whether, as a matter of law,

Case: 1:11-cv-00763-JG   Doc #: 25-3   Filed: 07/20/11   15 of 40.   PageID #: 192

Page 2
2005 U.S. Dist. LEXIS 32864, *

the plaintiff is entitled to legal relief even if everything alleged in the complaint is true. *Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993)*(citing *Nishiyama v. Dickson County, Tennessee, 814 F.2d 277, 279 (6th Cir. 1987)).* Put another way, "the purpose of a motion under Federal *Rule 12(b)(6)* is to test the formal sufficiency of the statement of the claim for relief; the motion is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case." 5B Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1356 (3d ed. 2004).

The test for dismissal under *Fed. R. Civ. P. 12(b)(6)* is a stringent one. "[A] complaint should not be dismissed for failure to state a claim on which relief can be granted unless it appears beyond doubt that the [*4] plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hartford Fire Ins. Co. v. California, 509 U.S. 764, 811, 113 S. Ct. 2891, 125 L. Ed. 2d 612 (1993)*(quoting *Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).* In addition, for purposes of the motion to dismiss, the complaint must be construed in the light most favorable to the plaintiff and plaintiff's allegations are to be taken as true. *Scheuer v. Rhodes, 416 U.S. 232, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974).*

To survive a motion to dismiss under *Fed. R. Civ. P. 12(b)(6)*, "a ... complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Columbia Natural Resources, Inc. v. Tatum, 58 F.3d 1101 (6th Cir. 1995), cert. denied, 516 U.S. 1158, 116 S. Ct. 1041, 134 L. Ed. 2d 189 (1996).* The Court "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987).* Put another way, bare assertions of legal conclusions are not sufficient. *Lillard v. Shelby County Bd. of Educ., 76 F. 3d 716, 726 (6th Cir. 1996).* [*5] It is only well-pleaded facts which are construed liberally in favor of the party opposing the motion to dismiss. *Id.*; see also Wright & Miller, *supra,* § 1357.

In this case, the Defendants' Motion To Dismiss is based upon application of the statute of limitations. When a complaint indicates that the relief requested therein is barred by the statute of limitations, the complaint is to be dismissed pursuant to *Rule 12(b)6)* for failure to state a claim upon which relief can be granted. *Martinez v. Western Ohio Health Care Corp., 872 F.Supp. 469, 471 (S.D.Ohio 1994)*(citing *Kaiser Aluminum and Chemical Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045 (5th Cir. 1982), cert. denied, 459 U.S. 1105, 103 S. Ct. 729, 74 L. Ed. 2d 953 (1983)).*

In addition to involving *Rule 12(b)(6)*, this branch of Defendants' Motion seeks dismissal based upon the doctrine of laches. Since the Lanham Act does not contain a statute of limitations, courts use principles of laches as developed by courts of equity when analyzing whether a Lanham Act claim is time-barred. *Ford Motor Company v. Catalanotte, 342 F.3d 543, 550 (6th Cir. 2003).*

Laches is "principally [*6] a question of the inequity of permitting the claim to be enforced." *Id.* (quoting *Holmberg v. Armbrecht, 327 U.S. 392, 396, 66 S. Ct. 582, 90 L. Ed. 743 (1946)).* Laches is specifically defined as a "negligent and unintentional failure to protect one's rights." *Pearpoint Ltd. v. Sreco-Flexible, Inc., 2003 U.S. Dist. LEXIS 24158, Case No. 3:02CV7335, 2003 WL 23198814 at *3 (N.D. Ohio Dec. 17, 2003)*(citing *Elvis Presley Enter., Inc. v. Elvisly Yours, Inc., 936 F.2d 889, 894 (6th Cir. 1991)).* A party asserting laches must show: (1) lack of diligence by the party against whom the defense is asserted and (2) prejudice to the party asserting it. *2003 U.S. Dist. LEXIS 24158, [WL] at *4.* Further, implicit in a finding of laches regarding trademark infringement is the presumption that an underlying claim for infringement existed at the time when the court begins to measure the plaintiff's delay. *Kellogg Co. v. Exxon Corp., 209 F.3d 562, 569 (6th Cir. 2000), cert. denied, 531 U.S. 944, 121 S. Ct. 340, 148 L. Ed. 2d 273 (2000).*

To evaluate whether a party has been diligent in protecting a trademark, a court looks to the state law statute of limitations for injury to personal property. *Pearpoint, 2003 U.S. Dist. LEXIS 24158, 2003 WL 23198814 [*7] at *3.* The Ohio statute of limitations for injury to personal property is two (2) years. *Id.* (citing *Ohio Rev. Code § 2305.10).*

In the Sixth Circuit, "there is a strong presumption that a plaintiff's delay is reasonable so long as the analogous statute of limitations has not elapsed." *Id.* (citing *Elvis Presley Enter., 936 F.2d at 894).* Further, "a delay beyond the... statutory period is presumptively prejudicial and unreasonable." *Id.* (citing *Nartron Corp. v. STMicroelectronics, Inc. 305 F.3d 397, 408 (6th Cir. 2002), cert. denied, 538 U.S. 907, 123 S. Ct. 1486, 155 L. Ed. 2d 227 (2003)).* Finally, the period of delay is measured from the time when the plaintiff has actual or constructive knowledge of the alleged infringing activity. *Id.*

"To rebut the presumption that delay beyond the statutory period is unreasonable and prejudicial, a plaintiff must: (1) rebut the presumption of prejudice; (2) establish that there was a good excuse for its delay; or (3) show that the defendant engaged in 'particularly egregious conduct which would change the equities significantly in plaintiff's favor.'" *Id.* (citing *Nartron, 305 F.3d at 409).* [*8]

Regarding damages, laches bars pre-suit monetary damages. *Herman Miller, Inc. v. Palazzetti Imports and Exports, Inc., 270 F.3d 298, 320 (6th Cir. 2001).* However, laches does not bar injunctive relief and does not bar damages that occur after the filing of the suit. *Kellogg, 209 F.3d at 568.*

The Third Circuit has held that the laches defense should generally not be disposed of in pretrial motions and this is a pretrial motion. *Country Floors, Inc. v. A Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1066 (3rd Cir. 1991).* The reason given is that "correct disposition of the equitable defense of laches can only be made 'by a close scrutiny of the particular facts and a balancing of the respective interests and equities of the parties, as well as of the general public.'" *Id.* (quoting 2 J. McCarthy *Trademarks and Unfair Competition* 573 (2d ed. 1984)). Therefore, according to the Third Circuit, disposition of the defense of laches usually requires the kind of record that is created only by a full trial on the merits. *Id.*

The Supreme Court has not, however, indicated that laches is a question for the jury. The Supreme [*9] Court has held that, "the existence of laches is a question primarily addressed to the discretion of the trial court." *Czaplicki v. The Hoegh Silvercloud, 351 U.S. 525, 534, 76 S. Ct. 946, 100 L. Ed. 1387 (1956).* However, the Sixth Circuit has affirmed the granting of summary judgment regarding laches by a district court. *City of Wyandotte v. Consolidated Rail Corp., 262 F.3d 581, 584 (6th Cir. 2001).* Therefore, assuming that laches is not a question that only the jury can decide, the analysis will proceed.

Analysis

Because this is a Motion To Dismiss pursuant to *Rule 12(b)(6),* the Court must limit its review to the facts alleged in the Complaint. In relevant part, Morel's Complaint alleges that consent to use the MOREL mark was withdrawn in 1996. (Compl. P11.) Morel then allegedly contacted the Defendants about their unauthorized use of the MOREL name and mark "on several occasions." (Id. P16.) Further, Morel allegedly requested that the Defendants cease their acts of unfair competition on several occasions, but the Defendants have refused to cease such acts. (Id. P22.)

The Court cannot conclude from this pleading that Morel lacked diligence nor can the Court conclude that [*10] the Defendants were prejudiced. In addition, the Court cannot determine when Morel had actual or constructive knowledge of the alleged infringement from the face of the Complaint. Therefore, the elements of the defense of laches are not satisfied on the face of the Complaint. This only serves to confirm that the defense

of laches requires a close scrutiny of the facts and a balancing of the respective interests of the Parties, a scrutiny and balancing that cannot be achieved when viewing only a Complaint.

The Court notes that Morel is seeking injunctive relief and, presumably, monetary damages that may arise after the filing of this lawsuit. This type of relief is not barred by the doctrine of laches. Therefore, Morel's Complaint could not be dismissed at this time due to the defense of laches based upon the damages sought.

The branch of the Defendants' Motion for Summary Judgment seeking dismissal based upon the defense of laches is OVERRULED. The analysis now turns to the second branch of Defendants' Motion To Dismiss.

## PERSONAL JURISDICTION

In the second branch of their Motion To Dismiss, the Defendants argue that the Court may not exercise personal jurisdiction over them [*11] because they lack sufficient minimum contacts with Ohio. Morel responds that the Defendants have sufficient contacts with Ohio to be subject to personal jurisdiction in this Court. The standard of review regarding personal jurisdiction will first be set forth following an analysis of this branch of the Motion.

Standard of Review

When a motion to dismiss for lack of personal jurisdiction pursuant to *Fed.R.Civ.P. 12(b)(2)* is made, the plaintiff has the burden of proving that jurisdiction exists. *Youn v. Track, Inc., 324 F.3d 409, 417 (6th Cir. 2003)*(citing *Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 887-88 (6th Cir. 2002)).* As a part of the burden of proof, the plaintiff's burden of persuasion depends upon whether the court conducts an evidentiary hearing on the motion to dismiss.

When an evidentiary hearing is held, the plaintiff must establish jurisdiction by a preponderance of the evidence. *Id. at 417.* When there is no evidentiary hearing, as is the case here, the plaintiff must make only a prima facie showing and the pleading and affidavits, when in conflict, are viewed in a light most [*12] favorable to the plaintiff. *Diebold, Inc. v. Firstcard Financial Services, Inc., 104 F.Supp.2d 758, 760 (N.D.Ohio 2000)*(citing *Dean v. Motel 6 Operating L.P., 134 F.3d 1269, 1272 (6th Cir. 1998)).*

Federal courts apply the law of the forum state when determining whether personal jurisdiction exists. *Youn, 324 F.3d at 417; Bird v. Parsons, 289 F.3d 865, 871 (6th Cir. 2002).* If personal jurisdiction exists under the forum state's long-arm statute, the court then must determine

whether personal jurisdiction would comport with the *Due Process Clause of the U.S. Constitution. Id.*

For the purpose of the Constitutional Due Process analysis, there is a distinction between general and specific jurisdiction. *Youn, 324 F.3d at 417.* However, either one is an adequate basis for personal jurisdiction. *Id.*

General jurisdiction exists when the defendant's contacts with the forum state are "substantial" and "continuous and systematic," so that the state may exercise personal jurisdiction even if the action does not relate to the defendant's contacts with the state. *Id at 418.* Specific jurisdiction [*13] exists when the contacts giving rise to jurisdiction relate to the claim that is before the court. *Id.*

The Sixth Circuit has established a three-part test for determining whether specific personal jurisdiction exists. *Id.* For specific personal jurisdiction to exist; (1) a defendant must purposefully avail itself of the privilege of acting in the forum state; (2) the cause of action must arise from the defendant's activities in the forum state; and (3) the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of personal jurisdiction over the defendant reasonable. *Id.* (citing *Southern Machine Co. v. Mohasco Industries, Inc., 401 F.2d 374, 381 (6th Cir. 1968)).* Finally, when a state's long-arm statute extends to the limits of Due Process, a district court is able to collapse its long-arm-analysis into its due process analysis. *Matrix Essentials, Inc. v. Harmon Stores, Inc., 205 F.Supp.2d 779, 783 (N.D.Ohio 2001)* (citing *CMS Generation Co. v. Spectrum Technologies U.S.A., Inc., 69 F.Supp.2d 915, 919 (E.D.Mich. 1999)).*

One of the alleged [*14] contacts in this case involve a website maintained by Morel USA. The Sixth Circuit has adopted the "Zippo sliding scale" approach to determine if the operation of a website constitutes purposeful availment. *Cadle Co. v. Schlichtmann, 123 Fed. Appx. 675, 2005 WL 293666 at **3 (6th Cir. 2005).* The "Zippo sliding scale" approach "distinguishes between interactive websites, where the defendant establishes repeated online contacts with residents of the forum state, and websites that are passive, where the defendant merely posts information on the site." *Id.* "Interactive websites can subject the defendant to specific personal jurisdiction, whereas passive websites are less likely to confer such jurisdiction." *Id.* (citing *Neogen, 282 F.3d at 889-91).*

For example, Operation of a website can constitute purposeful availment if the website is interactive "to a degree that reveals specifically intended interaction" with residents of the forum state. *Bird, 289 F.3d at 874.* Further, even if the website is not interactive, the use of names obtained from the website for business purposes

constitutes purposeful availment. *Id. at 875.* [*15] However, the maintenance of a website, in and of itself, does not constitute the purposeful availment of the privilege of acting in the forum state because a website, by its nature, can be accessed internationally. *Neogen, 282 F.3d at 890.* Finally, a website must be considered along with other contacts with the forum state. *Neogen, 282 F.3d at 891.*

In this case, Ohio is the forum state and the Ohio Supreme Court has determined that Ohio's long-arm statute does not extend to the limits of due process. *Goldstein v. Christiansen, 70 Ohio St. 3d 232, 1994 Ohio 229, 638 N.E.2d 541, 545 n.1 (Ohio 1994).* Therefore, this Court must determine if personal jurisdiction is present under Ohio's long-arm statute and, if so, whether personal jurisdiction comports with the *Due Process Clause of the U.S. Constitution.*

Ohio's long-arm statute allows personal jurisdiction over out-of-state defendants for a variety of reasons including when the cause of action arises out of their "transacting any business in this state." *Matrix, 205 F.Supp.2d at 785* (citing Ohio's long arm statute, *O.R.C. § 2307.382*). Further, courts determine whether an out-of-state [*16] defendant has transacted business in Ohio on a case-by-case basis with only the language of Ohio's long-arm statute for guidance. *Id.*

Analysis

First, Morel must make a prima facie showing that Morel USA and Shabani are subject to Ohio's long-arm statute. If Morel USA and Shabani are subject to Ohio's long-arm statute, Morel must then make a prima facie showing that subjecting Morel USA and Shabani to personal jurisdiction comports with the *Due Process Clause of the U.S. Constitution.*

Ohio's Long-Arm Statute

Ohio's long-arm statute provides that a court may exercise personal jurisdiction over a defendant who, among other things, transacts any business in Ohio. *Ohio Rev. Code § 2307.382(A)(1).* This section of the Ohio Revised Code is "very broadly worded" and permits jurisdiction over nonresident defendants who transact "any" business in Ohio. *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc., 53 Ohio St. 3d 73, 559 N.E.2d 477, 480 (Ohio 1990).*

By their own admission, Morel USA has transacted business with persons in Ohio. Shabani declares that "Morel Acoustics USA, Inc. has, at most, derived 1% of its revenue from a small mail order business [*17] that deals in repairs and parts from some mail order customers in Ohio." (Shabani Decl. 25 3/2/20.) Specifically, Shabani indicates that an Ohio company called "Parts

Express" is a Morel USA distributor who sells Morel products to manufacturing companies. (Wunsi Decl. Ex. B 5/8/05.) Morel USA also confirms that it transacted business with Parts Express at least until 2002. (Shabani Decl. 3-4 undated.)

Morel USA also operates a website that offers to sell goods and, by virtue of being on the internet, is available to customers in Ohio. Morel USA argues that this website is not interactive. While this may be true, the website offers to sell goods, provides order forms to be downloaded and provides an e-mail link over which an order may be placed. (Shabani Decl. 5 undated.) The Website provides payment options and shipping information. (Id.) In addition, the website provides specifications and prices for products and invites customers to place orders. (Id.)

Morel USA's website is not interactive in that potential customers do not interact directly with Morel USA using the website. However, this website is not passive either. Customers can use the website to download forms and are given [*18] instructions on how to place orders. Customers can use the link provided to e-mail their orders to Morel USA. Customers are also given payment options and shipping information. The operation of this website falls somewhere on the "Zippo sliding scale" and, when combined with the other contacts with Ohio, provides enough contacts to confer personal jurisdiction over Morel USA under Ohio's long-arm statute.

Jurisdiction over Shabani under Ohio's long-arm statute is established by virtue of his allegation that he is owner of the trade mark at issue (Shabani Decl. 10 3/2/05), because he is allegedly the sole owner and primary officer of Morel USA (Shabani Decl. 2, 8 3/2/05) and because Morel USA transacted business in Ohio and is subject to Ohio's long-arm statute. [1] *Cf., Third National Bank in Nashville v. WEDGE Group Inc., 882 F.2d 1087, 1090 (6th Cir. 1989)* (finding a parent corporation's total ownership and substantial control over its subsidiary's activities sufficient to show that it purposefully availed itself of doing business in the forum state as a result of the subsidiary's actions), *cert. denied, 493 U.S. 1058, 110 S. Ct. 870, 107 L. Ed. 2d 953 (1990)*. Having determined that [*19] Morel USA and Shabani are subject to personal jurisdiction under Ohio's long-arm statute, the analysis turns to whether exercising personal jurisdiction over them would comport with the *Due Process Clause of the U.S. Constitution.*

> 1   Accordingly, Morel USA and Shabani will hereinafter be discussed as a single entity with regard to the issue of personal jurisdiction.

In this case, Morel does not argue that this Court has general jurisdiction over Morel USA and Shabani. Morel argues that this Court has specific jurisdiction in that the contacts that give rise to jurisdiction relate to the claim that is before the Court. This Court must, therefore, apply the three-part *Mohasco* test to determine if it has specific personal jurisdiction.

Purposeful Availment

To comport with due process, a defendant must purposefully avail itself of the privilege of acting in the forum state. In this case, Morel USA purposefully availed itself of the privilege of acting in Ohio. Morel USA provided products and services to residents [*20] of Ohio and specifically to Parts Express, an Ohio company. Although these contacts may have been initiated by customers in Ohio, Morel USA deliberately chose to supply the products and services. *See, Neogen, 282 F.3d at 892* (holding that a defendant that shipped materials to and accepted payment from customers residing in the forum state, regardless of what percentage of the defendant's business was represented by these contacts, purposefully availed itself of the privilege of acting in the forum state).

Morel USA also operates a website that does more than simply advertise Morel USA's products. The website provides specifications and prices, invites orders, provides order forms for downloading and provides an e-mail link for placing orders. The existence of the website together with the actual providing of products and services to customers in Ohio is prima facie evidence that Morel USA purposefully availed itself of the privilege of doing business in Ohio.

Basis for Cause of Action

To comport with due process, the cause of action must arise from the defendant's activities in the forum state. This requirement is satisfied when the defendant's contacts are related [*21] to the operative facts of the case. *Bird, 289 F.3d at 875*.

In this case, Morel's claims are for trademark infringement and unfair competition based upon Morel USA's use of MOREL as a trademark in connection with their business and based upon Morel USA's use of Morel as part of a domain name. Morel has made a prima facie case that Morel USA used the MOREL trademark when selling products in Ohio and used the MOREL domain name to transact business in Ohio. Morel USA's use of MOREL in transacting business in Ohio is the cause of the injuries alleged by Morel. As such, Morel USA's contacts are related to the operative facts of the case. Said another way, Morel's Complaint arises, in part, out of Morel USA's contacts with Ohio.

Reasonableness

Finally, to comport with due process, the acts of the defendant or the consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of personal jurisdiction over the defendant reasonable. When the defendants have sufficient contacts with the forum state and the wrongs of which the plaintiff complains arise out of those contacts, a court may infer that exercise of personal [*22] jurisdiction over the defendant is reasonable. *See, CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1268 (6th Cir. 1996).*

The Defendants declare that neither Shabani nor any agent of Morel USA has ever visited Ohio nor do they conduct business in Ohio. (Morel Decl. 23024 3/2/05.) The Defendants are not licensed to do business in Ohio and none of Defendants' products are sold in Ohio. (Id. 27-28.) Also, the Defendants do not now own, lease or control property in Ohio and they have no bank accounts in Ohio. (Id. 29-30.) Finally, the Defendants declare that neither Shabani nor Morel USA maintain phone or fax listings in Ohio and none of their salespersons travel to Ohio. (Id. 32-35.)

However, in this case, the exercise of personal jurisdiction is reasonable. Morel USA has had a business relationship with an Ohio corporation that involved sales to Ohio residents. In addition, Morel USA continues to maintain a website which markets products to users, which presumably include Ohio residents. Although not interactive per se, the website provides order forms for downloading, provides telephone and fax numbers and provides an e-mail link for placing orders.

Conclusion

[*23] Ohio's long-arm statute provides that a Court may exercise jurisdiction over Morel USA and Shabani because they have transacted business in Ohio. Further, the exercise of personal jurisdiction over Morel USA and Shabani by this Court comports with the *Due Process Clause of the U.S. Constitution.* Therefore, the branch of Defendants' Motion seeking dismissal for lack of personal jurisdiction is OVERRULED. The analysis now turns to the third branch of Defendants' Motion.

**VENUE**

In the third branch of their Motion To Dismiss, the Defendants argue that this matter should be transferred to United States District Court for the District of Massachusetts because all transactions alleged in the complaint occurred in the State of Massachusetts. Morel responds that venue is proper in this judicial district under *28 U.S.C. § 1391* and venue should remain here.

Venue In the Southern District of Ohio

*Section 1391(b)* of Chapter 28 of the United States Code provides that "a civil action where jurisdiction is not founded solely on diversity of citizenship may ...be brought only in ... (3) a judicial district in which any defendant may be found, if there is no district [*24] in which the action may otherwise be brought." *28 U.S.C. § 1391(b). Section 1391(c)* then provides that "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." *28 U.S.C. § 1391(c).*

In this case, Morel USA is a corporate defendant and is subject to personal jurisdiction in this judicial district. Therefore, venue in this judicial district is proper.

Transfer of Venue

Having determined that venue is proper in this judicial district, the analysis turns to the Defendants wish to transfer venue to the District of Massachusetts. *Section 1404(a)* of Chapter 28 of the United States Code provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *Centerville ALF, Inc. v. Balanced Care Corp., 197 F.Supp.2d 1039, 1048-49 (S.D. Ohio 2002).* Also, the moving parties, in this case Morel USA and Shabani, have the burden of proving that a venue change is appropriate. *Id. at 1049.* [*25] Finally, determination as to whether to transfer venue rests with the sound discretion of this Court. *Nicol v. Koscinski, 188 F.2d 537, 538 (6th Cir. 1951).*

When deciding whether to allow a change of venue, the district court considers the private interests of the parties as well as other public interest concerns such as systemic integrity and fairness which come under the rubric of "interests of justice." *Centerville, 197 F.Supp.2d at 1049.* Although there is no definitive list, the private and public interests are embedded in a number of case-specific factors to be considered. Among the factors to be considered are: (1) the plaintiff's choice of forum; (2) the location of witnesses and documents; (3) the nature of the action and where the bulk of operative facts occurred; and (4) convenience of the parties. *Id.* When weighing these factors, unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should "rarely" be disturbed. *Nicol, 188 F.2d at 537.*

Plaintiff's Choice of Forum

Plaintiff elected to litigate this matter in the Southern District of Ohio. This choice weighs heavily against transferring [*26] venue to the District of Massachusetts.

2005 U.S. Dist. LEXIS 32864, *

Location of Evidence

The Defendants present evidence that all of their operations are in Massachusetts. Thus, all of their officers, employees and relevant witnesses reside in Massachusetts. Further, all of the Defendants' records are in Massachusetts although the location of documents does not usually justify transfer as documents are easily copied and shipped. *See, Reed Elsevier, Inc. v. Innovator Corp., 105 F.Supp. 2d 816, 822 (S.D. Ohio 2000).*

Morel responds that the Defendants have not shown that it will be inconvenient or impractical to produce their evidence and witnesses in this forum. *See, Shapiro v. Merrill Lynch & Co., 634 F.Supp. 587, 590 (S.D. Ohio 1986)* ("The mere fact that some witnesses from the proposed transferee district may be called is, by itself, inadequate to warrant a transfer where it is not shown that they would be severely inconvenienced or that they are indeed key witnesses."). Morel also responds that third party witnesses that are not in Massachusetts may be called in that, without the benefit of discovery, the only confirmed U.S. customers for Defendants' business are located [*27] in Ohio.

Most probably, some of the evidence, including witnesses, is located in Massachusetts. That evidence which is in the form of records can presumably easily be shipped to Ohio. It is unclear as to where other witnesses may be located although there is evidence that some may be located in Ohio. Therefore, the Defendants have not shown that this factor weighs in their favor.

Nature of Action and Where Bulk of Operative Facts Occurred

This is an action for trademark infringement and for alleged illegal use of an internet domain name. The events giving rise to the claim include the alleged shipment of goods to persons in Ohio and the use of the Defendants' website by individuals including Ohio residents. This factor weighs in favor of venue in Ohio.

Convenience of the Parties

The Plaintiff is located in Israel and the Defendants are located in Massachusetts. Neither party is located in Ohio. In addition, the Plaintiff unpersuasively argues that, if this matter was transferred to Massachusetts, he could possibly be prejudiced by jurors who have a natural inclination to side with Morel USA and Shabani who are persons from their state.

The Plaintiff could be present for trial [*28] in Massachusetts as easily as in Ohio and the Court is unpersuaded by Plaintiff's argument regarding the jury. Clearly, trial in Massachusetts would be more convenient for the Defendants. Therefore, this factor weighs in favor of transferring venue.

Conclusion

Venue for this matter lies in the Southern District of Ohio. Morel USA is a corporate defendant and is subject to personal jurisdiction in this District.

Further, the Defendants have not met their burden of showing that this matter should be transferred to the District of Massachusetts. The Plaintiffs choice of forum in the Southern District of Ohio and the nature of the action are not outweighed by the convenience of the Parties. The branch of the Defendants' Motion To Dismiss regarding venue is OVERRULED. In addition, the Defendants' request to change venue to the District of Massachusetts is not well founded and is OVERRULED.

**SUMMARY**

Morel USA and Shabani have not shown that the elements of the defense of laches are satisfied on the face of the Complaint. Also, a court may exercise personal jurisdiction over Morel USA and Shabani under Ohio's long-arm statute because they have transacted business in Ohio and [*29] the exercise of this personal jurisdiction by this Court comports with the *Due Process Clause of the U.S. Constitution.* Finally, venue for this matter is proper in the Southern District of Ohio and the Defendants have not shown that venue should be transferred to the District of Massachusetts. Therefore, the Defendants' Motion To Dismiss is OVERRULED. All of Morel's Complaint remains to be adjudicated in this Court.

**DONE** and **ORDERED** in Dayton, Ohio, this Seventh day of September, 2005.

THOMAS M. ROSE

UNITED STATES DISTRICT JUDGE



HEATHER PERROW, Plaintiff, v. GRAND CANYON EDUCATION, INC., and
GRAND CANYON UNIVERSITY, INC., Defendants.

Case No. 2:09-cv-670

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
OHIO, EASTERN DIVISION

*2010 U.S. Dist. LEXIS 9538*

January 15, 2010, Decided
January 15, 2010, Filed

COUNSEL: [*1] For Heather Perrow, Plaintiff: Clayton Daniel Hall, LEAD ATTORNEY, Upper Arlington, OH.

For Grand Canyon Education, Inc., Grand Canyon University, Inc., Defendants: Peter M Ellis, LEAD ATTORNEY, DLA Piper LLP (US), Chicago, IL; Kate E Frenzinger, PRO HAC VICE, Phoenix, AZ; Mark A Nadeau, PRO HAC VICE, DLA Piper LLP, Phoenix, AZ.

JUDGES: ALGENON L. MARBLEY, UNITED STATES DISTRICT JUDGE. Magistrate Judge Kemp.

OPINION BY: ALGENON L. MARBLEY

OPINION

OPINION AND ORDER

I. INTRODUCTION

This matter is before the Court on Defendant Grand Canyon Education, Inc.'s ("GCE") Motion to Dismiss for Lack of Jurisdiction (Doc. 4) and Renewed Motion to Dismiss for Lack of Jurisdiction (Doc. 21), and Defendant Grand Canyon University, Inc.'s ("GCU") Motion to Dismiss for Lack of Jurisdiction (Doc. 6) and Renewed Motion to Dismiss for Lack of Jurisdiction (Doc. 22). For the reasons stated below, Defendants' Motions are DENIED.

II. BACKGROUND

A. FACTUAL BACKGROUND

GCE is a Delaware corporation with its principal place of business in Phoenix, Arizona. GCU is an online university also based in Phoenix. GCE is the owning and operating entity of GCU. Plaintiff Heather Perrow enrolled in online courses offered by GCU after conducting an online [*2] search for web-based degree programs. (Perrow Aff. at P 5.) Perrow got in touch with an enrollment counselor, Mr. Brand, who assisted her in filling out the requisite forms for enrollment and financial assistance. (*Id.* at P 7.) Perrow was informed that the program she had selected, the Master of Arts in Teaching Program of Study, was the appropriate program for her educational background. (*Id.*) Perrow was assigned a username, password, and GCU student e-mail account. (*Id.* at P 10.) Perrow used that information to log in to the GCU website to retrieve her course schedule and materials. (*Id.* at P 12.) Perrow purchased her textbooks through the GCU website and had them delivered to her home in Canal Winchester, Ohio. (*Id.* at P 15.)

Upon completion of her GCU coursework, Perrow contacted GCU to inquire about applying for student-teaching positions in central Ohio. (First Am. Compl. at P 17.) Perrow was then informed that she had completed the incorrect program, and that the program she had completed did not make her eligible for student teaching positions. (*Id.*) She was therefore unable to receive a teaching certificate from the State of Ohio. (*Id.*) GCU informed Perrow that if she wanted [*3] to become a certified teacher, she would have to re-enroll in the correct program at her own expense. (*Id.* at P 18.) Perrow has now re-enrolled in the correct program. (*Id.* at P 19.) She will not be eligible to become a certified teacher in

Ohio until she completes the two-year program and the obtains the requisite student teaching experience. (*Id.*)

Perrow filed her complaint in the instant case alleging negligence, fraudulent inducement, and unjust enrichment. She seeks damages totaling approximately $ 120,000. [1]

> 1 Perrow's complaint alleges only an amount "in excess of" $ 50,000 in damages. However, when GCE and GCU moved for this case to be removed from state court to federal court, they included in their motion an affidavit from Kathryn Dillon Hogan, the University Registrar and Vice President for State Compliance at GCE. Hogan's affidavit stated that she received an electronic correspondence from Perrow alleging that her damages exceeded $ 120,000. Where, as here, the amount in controversy requirement is not clearly established in the complaint, "the court may inquire by affidavits or otherwise, into the facts as they exist." *Land v. Dollar, 330 US 731, 735 n.4, 67 S. Ct. 1009, 91 L. Ed. 1209 (1947).* Based upon **[*4]** Hogan's affidavit, the Court has diversity jurisdiction over this case.

## B. PROCEDURAL BACKGROUND

Perrow filed her original complaint in state court. GCE and GCU then removed the case to this Court based upon diversity jurisdiction. GCE and GCU filed motions to dismiss, alleging, among other things, that Perrow had failed sufficiently to plead personal jurisdiction over the defendants. Perrow then filed an amended complaint, alleging facts supporting personal jurisdiction. GCE and GCU renewed their motions to dismiss, removing the argument regarding failure sufficiently to plead personal jurisdiction.

## III. STANDARD OF REVIEW

GCE and GCU have filed motions to dismiss pursuant to *Rule 12(b)(2)* for lack of personal jurisdiction. The plaintiff bears the burden of proving personal jurisdiction exists. *CompuServe Inc. v. Patterson, 89 F.3d 1257, 1262-63 (6th Cir. 1996).* In the face of a supported motion to dismiss, the plaintiff may not rest on his pleadings, but must, by affidavit or otherwise, set forth specific evidence supporting jurisdiction. *Theunissen v. Matthews, 935 F.2d 1454, 1458 (6th Cir. 1991)* (citing *Weller v. Cromwell Oil Co., 504 F.2d 927, 930 (6th Cir. 1974)).* When the Court **[*5]** considers a motion to dismiss pursuant to *Rule 12(b)(2)* without an evidentiary hearing on the issue of personal jurisdiction, however, the plaintiff "'need only make a *prima facie* showing of jurisdiction.'" *Bird v. Parsons, 289 F.3d 865, 871 (6th Cir. 2002)* (quoting *Neogen Corp. v. Neo Gen Screening,*

*Inc., 282 F.3d 883, 887 (6th Cir. 2002))* (internal citation omitted). The plaintiff can make this *prima facie* showing by "'establishing with reasonable particularity sufficient contacts between [the Defendants] and the forum state to support jurisdiction.'" *Neogen Corp., 282 F.3d at 887* (quoting *Provident Nat'l Bank v. California Savings Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987)).*

In deciding a Rule 12(b)(2) motion to dismiss, the Court is to construe the facts in the light most favorable to the non-moving party. Significantly, the Court is not to weigh the controverting assertions of the party seeking dismissal. *CompuServe, 89 F.3d at 1262* (citing *Theunissen, 935 F.2d at 1459*). This refusal to weigh the defendants' controverting assertions is necessary to prevent non-resident defendants from avoiding jurisdiction simply by filing an affidavit that denies all jurisdictional facts. *Compuserve, 89 F.3d at 1262* **[*6]** (citing *Theunissen, 935 F.2d at 1459*).

## IV. LAW AND ANALYSIS

A federal court sitting in a diversity matter can exercise personal jurisdiction over a defendant if jurisdiction is "(1) authorized by the law of the state in which it sits, and (2) in accordance with the *Due Process Clause of the Fourteenth Amendment.*" *Tharo Sys., Inc. v. Cab Produkttechnik GMBH & Co. KG, 196 F. App'x 366, 369 (6th Cir. 2006)* (quoting *Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 888 (6th Cir. 2002)).* The Court is satisfied in this case that both requirements are met.

## A. OHIO'S LONG-ARM STATUTE

Plaintiff contends that four separate sections of Ohio's long-arm statute support this Court's exercise of personal jurisdiction over the defendants. Because the Court is convinced that personal jurisdiction is proper based upon *section (A)(4)*, dealing with tortious activity occurring outside the forum state causing injury in the forum state, the other three sections will not be addressed.

Pursuant to Ohio's long-arm statute, a court may properly exercise personal jurisdiction over a non-resident defendant who "caus[es] tortious injury in [Ohio] by an act or omission outside [Ohio] if he regularly does or solicits **[*7]** business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in [Ohio]." *Ohio Rev. Code § 2307.382(A)(4). Section (A)(4) of the statute* "require[s] a finding that (1) an act or omission outside the state caused tortious injury in Ohio, and (2) the defendant regularly conducted activity in Ohio.'" *Bird, 289 F.3d at 876* (quoting *Estate of Poole v. Grosser, 134 Ohio App. 3d 386, 731 N.E.2d 226, 229*

2010 U.S. Dist. LEXIS 9538, *

*(Ohio App. 1999))*. A defendant need not be physically present in the forum state for personal jurisdiction to exist. *Goldstein v. Christiansen, 70 Ohio St. 3d 232, 1994 Ohio 229, 638 N.E.2d 541, 544 (Ohio 1994)*.

Perrow's allegations support a conclusion that Defendants committed an act outside of Ohio that caused tortious injury in Ohio. Perrow alleges that Defendants, while located in Arizona, engaged in conduct that constituted negligence, fraudulent inducement, and unjust enrichment. She also alleges that she, while located in Ohio, suffered damages in excess of $ 120,000 as a result of Defendants' conduct. At this stage in the litigation, Perrow has sufficiently alleged facts supporting jurisdiction under Ohio's long-arm statute. *See Neogen, 282 F.3d at 888* (holding **[\*8]** that plaintiff had "presented a prima facie case" that the court could exercise personal jurisdiction over the defendant pursuant to the tortious conduct section of Michigan's long-arm statute "based upon [the plaintiff's] allegation that the use of [the defendant's] website and tradename in dealing with its Michigan customers has caused an adverse economic effect upon [the plaintiff] in Michigan"); *see also Bird, 289 F.3d at 872* ("Although this reasoning lacks any direct factual support, we must draw all permissible inferences in favor of [the plaintiff] at this stage of the proceedings, because no evidentiary hearing or discovery has occurred.").

Perrow must also establish that Defendants "regularly do[] or solicit[] business, or engage[] in any other persistent course of conduct, or derive[] substantial revenue from goods use or consumed or services rendered in [Ohio]." *Ohio Rev. Code § 2307.382(A)(4)*. The analysis here mirrors that to used determine "purposeful availment" for due process purposes. *See Bird, 289 F.3d at 876* (finding that defendant "regularly conducted activity in Ohio" based upon a finding that defendant purposefully availed itself of the benefits of doing business **[\*9]** in Ohio). [2] Because, as discussed below in the due process analysis, the Court finds that defendants have purposefully availed themselves of the benefits of doing business in Ohio, the Court finds that Defendants regularly conduct business in Ohio.

> 2 While the Sixth Circuit has "recognized that Ohio's long-arm statute is not coterminous with federal constitutional limits," it has "consistently focused on whether there are sufficient minimum contacts between the nonresident defendant and the forum state so as not to offend 'traditional notions of fair play and substantial justice'" when analyzing the propriety of personal jurisdiction under Ohio's long-arm statute. *Bird, 289 F.3d at 871* (quoting *Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945))*.

Perrow has therefore established a prima facie case that this Court's exercise of personal jurisdiction over Defendants is authorized by Ohio's long-arm statute.

**B. DUE PROCESS**

In evaluating whether personal jurisdiction complies with due process, the Court must determine whether there are sufficient minimum contacts between the non-resident defendant and the forum state so as not to offend "'traditional notions of fair play and substantial **[\*10]** justice.'" *Bird, 289 F.3d at 872* (quoting *Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945))*. The Sixth Circuit has adopted a three-part test for determining whether the exercise of personal jurisdiction over an out-of-state defendant comports with due process: (1) "the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state;" (2) the cause of action must arise from the defendant's activities there; and (3) the acts of the defendant or the consequences caused by the defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable." *S. Mach. Co. v. Mohasco, 401 F.2d 374, 381 (6th Cir. 1968)*. As discussed fully below, the Court finds all three requirements to be satisfied in this case.

**1. Purposeful Availment**

A defendant may purposefully avail himself of the privilege of acting in a forum state by operating a website, "if the website is interactive to a degree that reveals specifically intended interaction with residents of the state." *Neogen, 282 F.3d at 890* (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F.Supp. 1119, 1124 (W.D. Pa. 1997)*. **[\*11]** Simply maintaining a passive website, however, is not enough: "[t]he level of contact with a state that occurs simply from the fact of a website's availability on the internet is . . . an 'attenuated' contact that falls short of purposeful availment." *Neogen, 282 F.3d at 890* (quoting *Bensusan Rest. Corp. v. King, 937 F.Supp. 295, 300 (S.D.N.Y. 1996))*. Maintaining a website through which residents of the forum state can and do submit orders and make purchases, on the other hand, can be sufficient to establish purposeful availment. *Bird, 289 F.3d at 874-75. See also Neogen, 282 F.3d at 890* (holding that the defendant purposefully availed himself of the privilege of doing business in the forum state by granting resident-clients passwords to access services on the website and welcoming the business of forum-state residents on a regular basis).

Courts analyzing whether courts may exercise personal jurisdiction over online universities located in other states have reached varied results. [3] The Third Circuit Court of Appeals found that the United States District

Court for the District of Delaware could not exercise personal jurisdiction over an online university located in Alabama, where the [*12] university only interacted with two students located in Delaware; there was no evidence that the university intended to provide educational services specifically in Delaware; and the student-Plaintiff was domiciled in Connecticut when she enrolled at the university, and failed to inform the university of her temporary relocation to Delaware. *Kloth v. Southern Christian University, 320 Fed. Appx. 113, 117 (3d Cir. 2008).* In contrast, the District Court for the District of New Jersey found that it could properly exercise personal jurisdiction over an online university based in Minnesota, where the university recruited students from New Jersey, advertised in New Jersey, accepted enrollment and class registration from students in New Jersey, and provided educational services to students in New Jersey. *Watiti v. Walden University, 2008 U.S. Dist. LEXIS 43217, 2008 WL 2280932, at *7-*8 (D.N.J. 2008).*

> 3  Defendants urge the Court to analogize this case to *Gehling v. St. George's School of Medicine, Ltd., 773 F.2d 539 (3d Cir. 1985)*. In that case, the court found that a Pennsylvania district court could not exercise personal jurisdiction over a university based in Grenada simply because some students at the university hailed [*13] from Pennsylvania, and the university had advertised in the The New York Times and The Wall Street Journal. *Gehling, 773 F.2d at 542-43.* The Court finds that case distinguishable, however, based upon the fact that the university at issue there was a traditional "bricks and mortar" university; students at that university were educated on-site in Grenada, not at home in the forum state. Here, Perrow did not travel to Arizona to receive her education; she received it from her own home in Ohio. In fact, while all educational services at a traditional university are provided in one location, online universities are specifically designed conveniently to provide education to students in all locations, eliminating the requirement that the student travel to the university's location to complete course work.

The Court finds that Defendants have purposefully availed themselves of the benefits of doing business in Ohio. They have set up an "active" website, through which students enroll in classes, receive course assignments, and are automatically enrolled in new classes upon their successful completion of their current classes. In addition, students are assigned usernames and passwords to log [*14] in to the school's website, and additional course materials, including textbooks, are shipped to students' homes from the university's location in Ari-

zona. *See Neogen, 282 F.3d at 892* ("When NGS mails these test results to Michigan customers, or sends him a password to be used interactively on its website, NGS reaches out to Michigan to perform its services there."). This case can be distinguished from *Kloth*, in which the Third Circuit found that the defendant online university had not purposefully availed itself of the benefits of doing business in the forum state. In *Kloth*, the online university had only had contact with two students from the forum state, and the university was unaware that the plaintiff ever resided in the forum state. *320 Fed. Appx. at 117.* Here, Defendants are in contact with approximately 1,000 Ohio residents, and they had repeated contacts with Perrow, fully aware that she was located in Ohio.

Defendants' conduct here is more like that of the online university at issue in *Watiti*. There, the District Court for the District of New Jersey found that the online university's solicitation of students in the forum state, acceptance of registration and enrollment from [*15] multiple students in the forum state, and provision of educational services to students in the forum state were sufficient to allow the court to exercise personal jurisdiction over the university. *Watiti, 2008 U.S. Dist. LEXIS 43217, 2008 WL 2280932, at *7-*8.* Here, Defendants' solicitation of students in Ohio is in dispute, but Defendants concede that at least one representative of the university regularly attends a nursing career fair in Ohio. (Hogan Aff. at P 13.) More importantly, though, Defendants are in the regular business of accepting registration and re-enrollment from students in Ohio, and they provide educational services to students in Ohio. [4]

> 4  The exact number of students enrolled from Ohio is unknown, but Defendants concede that it is somewhere on the order of, though fewer than, 1,000. (Hogan Aff. at P 8.)

Based upon Defendants' interaction with Perrow, fully aware that she was a resident of Ohio, and Defendants' presumably similar interaction with approximately 1,000 other Ohio residents, the Court finds that Defendants have purposefully availed themselves of the benefit of doing business in Ohio.

## 2. Arise from Activities in Forum State

The second due process requirement is that the cause of action [*16] must arise from the defendant's activities in the forum state. *S. Mach. Co., 401 F.2d at 381.* To meet this requirement, a plaintiff must establish at least a "causal connection" between the defendant's activities in the forum state and the harm to the plaintiff. *Neogen, 282 F.3d at 892.* Where, as here, "a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen

from those contacts." *CompuServe, 89 F.3d at 1267* (citing *Reynolds v. Int'l Amateur Athletic Fed'n, 23 F.3d 1110, 1119 (6th Cir. 1994))*. There can be no doubt that Perrow's allegations of negligence, fraudulent inducement, and unjust enrichment arise out of Defendants' activities in Ohio -- her allegations stem from Defendant's provision of educational services to her in Ohio. As a result, the second due process requirement is met.

### 3. Substantial Enough Connection to Make Jurisdiction Reasonable

The final due process requirement is that there be a substantial enough connection with the forum state to make the exercise of jurisdiction reasonable. *S. Mach. Co., 401 F.2d at 381.* When the first two prongs of the due process inquiry have been satisfied, **[*17]** Ohio courts will "presume the specific assertion of personal jurisdiction was proper." *Cole v. Mileti, 133 F.3d 433, 436 (6th Cir. 1998).* When making this reasonableness inquiry, courts are to consider several factors, "including 'the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies.'" *CompuServe, 89 F.3d at 1268* (quoting *Am. Greetings Corp. v. Cohn, 839 F.2d 1164, 1169-70 (6th Cir. 1988)).*

While Defendants would no doubt be burdened by defending this lawsuit in Ohio, given that they are based in Arizona, they knew they were engaging in business with almost 1,000 Ohio residents, including Perrow, when they accepted their registration and enrollment, shipped them course materials, and answered questions regarding whether their curriculum would satisfy Ohio teacher certification requirements. *See CompuServe, 89 F.3d at 1268* ("It may be burdensome for [the defendant] to defend a suit in Ohio, but he knew when he entered into [business] with [the plaintiff] that he was making a connection with Ohio, and presumably he hoped that connection would **[*18]** work to his benefit."); *Bird, 289 F.3d at 875* ("Although [the defendants] might face a burden in having to defend a lawsuit in Ohio, they cannot reasonably object to this burden given that [they have]

allegedly transacted business with 4,666 Ohio residents.").

Ohio also has an interest in protecting its citizens. *See id.* While this case does not involve an Ohio company or business-specific interests, *cf. id.* ("Ohio has a legitimate interest in protecting the business interests of its citizens."); *CompuServe, 89 F.3d at 1268* ("Ohio has a strong interest in resolving a dispute involving an Ohio company."), Ohio's interest in protecting its citizens is not significantly diminished simply because this case involves an individual rather than a corporation. Perrow also clearly has an interest in obtaining relief in this case -- she alleges that Defendants have delayed her teaching certificate by two years, and caused her to pay for two extra, unnecessary years of course work. While Arizona may have an interest in adjudicating a claim involving one of its corporations, "this interest does not override the other factors suggesting that personal jurisdiction in Ohio is reasonable." *Bird, 289 F.3d at 876.*

Given **[*19]** the presumption of reasonableness that arises from the Court's finding of purposeful availment and harm arising out of Defendants' contacts with Ohio, and the fact that the Court must "consider[] the pleadings and affidavits in a light most favorable to [the plaintiff]," *CompuServe, 89 F.3d at 1268,* the Court finds that Defendants have substantial enough connections with Ohio to make personal jurisdiction reasonable. All three requirements of due process are therefore met.

### V. CONCLUSION

This Court's exercise of personal jurisdiction over GCE and GCU comports with both Ohio law and due process. GCE and GCU's motions to dismiss are therefore **DENIED**.

**IT IS SO ORDERED.**

/s/ Algenon L. Marbley

**ALGENON L. MARBLEY**

**UNITED STATES DISTRICT JUDGE**

Dated: January 15, 2010



V SECRET CATALOGUE, INC., et al., Plaintiffs, v. VICTORIA ZDROK, Defendant.

Case No. 2:01-CV-0059

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO, EASTERN DIVISION

*2003 U.S. Dist. LEXIS 16159*

August 28, 2003, Decided
August 29, 2003, Filed

**SUBSEQUENT HISTORY:** Later proceeding at *V Secret Catalogue Inc. v. Zdrok, 2004 U.S. Dist. LEXIS 18849 (S.D. Ohio, Apr. 28, 2004)*

**PRIOR HISTORY:** *V Secret Catalogue, Inc. v. Zdrok, 2002 U.S. Dist. LEXIS 14286 (S.D. Ohio, June 28, 2002)*

**DISPOSITION:** [*1] Defendant's Motion for Relief from Judgment PROVISIONALLY DENIED. Plaintiffs' Motion to Show Cause and for Sanctions DENIED. Defendant's Motion to Strike DENIED. Defendant's Motion for Consideration and Request for Oral Argument GRANTED in part and DENIED in part.

**COUNSEL:** For V Secret Catalogue Inc, Victoria's Secret, Victoria'S Secret St, Intimate Beauty Corporation, Plaintiffs: Carrie A Shufflebarger, Melise R Blakeslee, Robert W Zelnick, LEAD ATTORNEYS, McDermott Will & Emery, Washington, DC.

For V Secret Catalogue Inc, Victoria's Secret, Victoria'S Secret St, Intimate Beauty Corporation, Plaintiffs: John L Landolfi, LEAD ATTORNEY, Vorys Sater Seymour & Pease, Columbus, OH.

For Victoria Zdrok, Defendant: John Ashley Bell, LEAD ATTORNEY, Columbus, OH.

**JUDGES:** EDMUND A. SARGUS, JR., UNITED STATES DISTRICT JUDGE. Magistrate Judge Terence P. Kemp.

**OPINION BY:** EDMUND A. SARGUS, JR.

**OPINION**

**OPINION AND ORDER**

This matter is before the Court for consideration of the Defendant's Motion for Relief from Judgment (Doc. # 26), the Plaintiffs' Motion to Show Cause and for Sanctions (Doc. # 30), Defendant's Motion to Strike (Doc. # 37) and the [*2] Defendant's Motion for Consideration and Request for Oral Argument (Doc. # 46). For the reasons that follow, the Motion for Relief from Judgment is provisionally denied, the Plaintiffs' Motion to Show Cause and for Sanctions is denied, the Defendant's Motion to Strike is denied, and the Defendant's Motion for Consideration and Request for Oral Argument is granted in part and denied in part.

**I.**

The dispute between the parties in this case has been litigated in three forums. In order to resolve the Defendant's present motion for relief from judgment, it is necessary to review the factual and procedural history of the parties' litigation.

Plaintiffs V Secret Catalogue, Inc., Victoria's Secret Direct, LLC, Victoria's Secret Stores, Inc. and Intimate Beauty Corporation d/b/a Victoria's Secret Beauty ["Plaintiffs"] filed suit in this Court on January 22, 2001 to remedy Defendant Victoria Zdrok's alleged "cybersquatting and unauthorized use, infringement and dilution of and Defendant's unfair competition with, Victoria's Secret's famous trademark and service mark VICTORIA'S SECRET and variations thereof." (*Complaint* at P 1). Plaintiffs are Delaware corporations with their

2003 U.S. Dist. LEXIS 16159, *

principal [*3] places of business in Columbus, Ohio. The Defendant is a resident of the State of New Jersey who has attained a Juris Doctor degree from Villanova Law School, a Masters Degree from Hahnemann University, and is pursuing a Ph.D. in clinical psychology.

Plaintiffs allege that the Defendant has engaged in the unauthorized use of Plaintiffs' marks in connection with the operation of her adult-oriented Internet business and website. Defendant's website offers for sale merchandise and subscriptions to her Internet site. (*Id.* at P 3). The site is accessed through at least five domain names: victoriassecretdesires.com, victoriaz.com, planetvictoria.com, victoriazdrok.net and beautywithbrains.net. (*Id.*).

Plaintiffs have registered the domain name of victoriassecret.com in order to provide information about their stores and products which bear the VICTORIA'S SECRET mark. (*Id.* at P 27). Plaintiffs' products include women's lingerie, clothing, beauty products, fragrances, outerwear, sleepwear, bedding, swimwear and gift items. (*Id.*).

Plaintiffs' complaint presents four counts: federal trademark infringement in violation of the Lanham Act, *15 U.S.C. § 1114* [*4] (Count I), cybersquatting in violation of the Lanham Act, *15 U.S.C. § 1125(d)* (Count II), federal unfair competition and false designation of origin in violation of the Lanham Act, *15 U.S.C. § 1125(a)*(Count III), and federal trademark dilution in violation of the Lanham Act, *15 U.S.C. § 1125(c)*(Count IV). A summons was issued to Defendant Zdrok at her residence in New Jersey on January 22, 2001.

On February 26, 2001, Attorney Steven L. Sloca, who is licensed in the State of California, wrote a letter to the undersigned as a "friend [1]" of Defendant Zdrok. In the letter, Sloca states that he would like to represent Zdrok in this Court but that he is aware of the Court's rule requiring local counsel for one not admitted to this bar. Sloca asked the Court to waive the local counsel requirement because Zdrok lived a great distance away from this Court and was unable to afford payment for local counsel. In his six-page letter, Sloca went on to argue for dismissal of the case and included citations to caselaw. On February 27, 2001, this Court entered an Order admonishing Sloca that letters to the Court are disfavored [*5] under the Local Rules of this Court. Nevertheless, the Court construed the letter as a motion to proceed without local counsel. The Court ordered Plaintiffs to respond to the motion. Following the response, this Court denied Defendant's request for waiver of the local counsel requirement. The Court further observed that "Defendant has been served, has yet to answer and has obtained no extension of time." (*Order*, March 24, 2001).

1   The Court notes that Sloca is apparently a business partner of Defendant in a website hosting business. (*See Exhibit D* attached to *Plaintiffs' Motion for Entry of Default*).

On April 4, 2001, the Plaintiffs filed a Request for Entry of Default, pursuant to *Fed. R. Civ. P. 55(a)*, for Defendant Zdrok's failure to plead or otherwise respond to Plaintiffs' complaint. In their request, Plaintiffs represent that Defendant was served by hand with a summons and complaint on January 29, 2001, making her responsive pleading due on or before February 18, 2001. Plaintiffs note that [*6] they agreed to extend the deadline to February 28, 2001. The Clerk entered Default on April 4, 2001. (Doc. # 10).

One day earlier, on April 3, Mr. Sloca sent a second letter to the Court again requesting that he be permitted to represent Defendant without local counsel due to Defendant's alleged poor financial status. On April 6, 2001, this Court entered an Order again denying Sloca's request and further reminding Sloca that letters to the Court are not well-received. On the same day, Plaintiffs filed a Motion for Entry of Default Judgment and Request for Hearing to Assess Damages. (Doc. # 12). Plaintiffs requested statutory damages with respect to Count II of their Complaint and a hearing for damages on Counts I, III and IV.

On April 10, 2001, this Court entered an Order of Default Judgment enjoining Defendant from engaging in various activities and awarding Plaintiffs $ 100,000 on Count II, together with prejudgment and postjudgment interest, with attorneys' fees and costs to be determined later. The Court scheduled the matter for a damages hearing on May 14, 2001. (Doc. # 13, # 14). On May 9, 2001, Plaintiffs moved to suspend the hearing on the basis that Plaintiffs had been unable [*7] to procure cooperation from Defendant as to the damages issue. (Doc. # 16). Plaintiffs advised the Court that Defendant had commenced suit against them in the United States District Court for the Central District of California on May 4, 2001. Accordingly, this Court vacated the damages hearing and ordered a subsequent Status Report. (Doc. # 17). In June 2001, Plaintiffs advised the Court of their intent to file a *Rule 12(b)(6)* motion in the California action. (Doc. # 19).

In August 2001, Plaintiffs advised the Court that their motion in the California case was granted. [2] (Doc. # 20). Accordingly, Plaintiffs renewed their request for prejudgment and postjudgment interest as well as attorneys' fees.

2   The court's Order stated that the action was commenced by Zdrok under *Rule 60(b)* to collat-

erally set aside this Court's entry of Default Judgment. The California court found this Court to be the most appropriate forum for Zdrok's requested relief and accordingly, the court declined to exercise jurisdiction over Zdrok's complaint. The court stated that Zdrok could not "upset the principles of judicial comity, fairness and efficiency that underlie the basic rule against horizontal appeals." (Exhibit A attached to *Plaintiffs' Status Report*).

[*8] On September 20, 2001, this Court entered an Order setting forth additional findings in support of the earlier Default Judgment Order. In particular, the Court found that it has personal jurisdiction over the Defendant under *Ohio Revised Code § 2307.382(A)*. (*Order* at P 1). The Court also specifically found that the Defendant was "validly served with a Summons and Complaint on January 29, 2001, in accordance with *Fed. R. Civ. P. 4(c)*." (*Id.* at P 2).

On June 11, 2002, this Court issued an *Opinion and Order* granting, in part, Plaintiffs' request for attorneys' fees and costs. On July 1, 2002, the Court entered Final Judgment with all outstanding matters resolved. (Doc. # 23).

On September 20, 2002, Attorney John Bell, licensed in the State of Ohio, entered a Notice of Appearance as Trial Counsel for Defendant (Doc. # 25) and filed the Motion for Relief from Judgment which is presently before the Court. Prior to the filing of this motion and, after the dismissal of her action in the State of California, Zdrok filed an action against Plaintiffs herein in the United States District Court for the District of New Jersey. The New Jersey case was filed on September 6, 2001. As [*9] that court observed, the complaint was nearly identical to the one earlier filed in the State of California. The Defendants in that case moved to dismiss and that motion was granted as set forth in a published decision, *Zdrok v. V Secret Catalogue, Inc., et al., 215 F. Supp.2d 510 (D. N.J. 2002)*.

In considering Zdrok's complaint pursuant to *Rule 60(b)* to set aside this Court's entry of default judgment, the New Jersey court took judicial notice of the various proceedings in this Court and in California. The court concluded that Zdrok's action in New Jersey was barred by claim preclusion. The court observed that Zdrok and her attorney, Mr. Sloca, were verbally instructed by the judge in California that the only recourse for Zdrok was to return to the Southern District of Ohio. Nonetheless, Zdrok attempted to litigate the action in New Jersey. The New Jersey court rejected this attempt holding that to entertain Zdrok's action in New Jersey would violate notions of judicial comity and undermine the ruling of the California court as well as the first decision issued by

the undersigned. *Id. at 516.* The court also awarded Defendants their costs and attorneys' [*10] fees. The court stated:

> Sloca has demonstrated willful bad faith by instituting multiple proceedings to resolve a single cause of action. Taken separately, Sloca's actions might not warrant sanctions, but his continuous disregard of federal court orders and precedent have led to this Court's determination that sanctions are justified in this situation.

*Id. at 518.*

Thus, after having her claims dismissed in federal courts in California and New Jersey, Defendant Zdrok appears before this Court requesting relief under *Rule 60(b)* to set aside this Court's entry of Default Judgment. The Court now considers the merits of this request as well as the merits of other pending motions.

## II.

### A. Defendant's Motion for Relief from Judgment

Defendant Zdrok contends that the entry of Default Judgment should be set aside pursuant to *Fed. R. Civ. P. 60(b)(3), (4)and (6)*. The rule provides:

> **(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence, Fraud, Etc.**
>
> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following [*11] reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one

year after the judgment, order or proceeding was entered or taken ....

*Fed. R. Civ. P. 60(b).*

Zdrok first contends that she was never properly served with process in this action because she was at work, and not at home, on the date and at the time that the process server avers that service was made. Zdrok claims that she merely received the complaint by ordinary mail. [3] Zdrok also contends that the judgment against her is [*12] void because this Court lacks personal jurisdiction over her. Finally, Zdrok contends that she has a meritorious defense to at least one of the Plaintiffs' claims that would justify relief from judgment. Before addressing the merits of these contentions, the Court outlines the applicable law under *Rule 60(b)*.

> 3    For the reasons explained *infra,* the Court cannot resolve the service of process issue on the present record. Thus, the Court will conduct an evidentiary hearing on September 16, 2003 at 1:30 p.m.

**Applicable Law**

Under *Fed. R. Civ. P. 12(a)(1)(A)*, a Defendant is required to serve an answer within twenty days of being served with a summons and complaint. *Rule 55* permits the clerk to enter a default when a party fails to defend an action as required. The Court then has the authority to enter a default judgment. *Fed. R. Civ. P. 55(b)(1)*. A party against whom a default judgment has been entered may then petition the Court to set aside the default judgment under *Rules 55(c) and 60(b)*.

The seminal [*13] case in the Sixth Circuit on the standard for *Rule 60(b)* motions to vacate default judgments is *United Coin Meter Co., Inc. v. Seaboard Coastline R.R., 705 F.2d 839 (6th Cir.1983)*. In that case, the Court held that *Rule 60(b)* is to be applied "equitably and liberally" in considering motions to vacate defaults and default judgments. *Id. at 845*. Further, the same factors that apply in considering a motion to vacate an entry of default under *Rule 55(c)* apply to a motion to vacate a default judgment. The factors are: (1) whether the opposing party would be prejudiced; (2) whether the proponent had a meritorious claim or defense; and (3) whether the proponent's culpable conduct led to the default. *Id.*

**Analysis**

**1. Prejudice to the Plaintiffs**

Plaintiffs argue that because both Defendant Zdrok and Mr. Sloca have shown a repeated lack of credibility

and candor, setting aside the default judgment in this case would only benefit their misconduct while prejudicing the Plaintiffs.

In particular, Plaintiffs point to the decision in the New Jersey action in which the district court sharply criticized the Defendant and her counsel for not seeking [*14] relief in this Court on the entry of default judgment.

> Refiling the independent action here in New Jersey against the order of Judge Tevrizian [of the federal court in California] is most certainly an act of willful bad faith. Sloca knew ... that filing suit here would make this the third U.S. District Court to entertain this case. To prevent the appearance that they were vexatiously multiplying the litigation, counsel neglected to mention that, previous to filing the action here, Sloca had filed the case in the Central District of California. It is simply unbelievable that in a 19-page, 47-paragraph Complaint ... which references everything from Zdrok's childhood dreams up to the present stage of her litigation, Sloca ... did not feel the need to mention the California action at any point. Omitting this key piece of the procedural history, counsel attempt to persuade the court that "New Jersey is the only state that properly has jurisdiction over the underlying controversy." ... Apparently, Zdrok's attorneys did not believe New Jersey was the most appropriate forum until after the complaint in California was dismissed. This omission amounts to deception of a federal court, [*15] which should not go unsanctioned .... To deter Sloca and [local counsel] from engaging in any such future abuses of the legal system, the Court will award fees and costs, to be borne jointly and severally.

*Zdrok v. V Secret Catalogue, Inc., 215 F. Supp.2d at 519.*

As the Plaintiffs point out, because of Zdrok's actions, the Plaintiffs have been forced to litigate in three different forums. Furthermore, Plaintiffs are now defending Zdrok's appeal of the New Jersey decision before the United States Court of Appeals for the Third Circuit. This Court is convinced, as the New Jersey court observed, that the Defendant's actions amount to a deception on the federal court system. Such deception cannot be condoned. Thus, the Court has no difficulty in con-

cluding that the Plaintiffs would be severely prejudiced if the default judgment entry were to be set aside.

## 2. Meritorious Claim or Defense

Plaintiffs argue that Defendant Zdrok has no meritorious defense that would justify setting aside the entry of default judgment. The Defendant disagrees. According to the Defendant, she has valid defenses to this Court's exercise of personal jurisdiction over her as well [*16] as to the merits of one of Plaintiffs' intellectual property claims. The Court considers Defendant's argument as to each matter, separately.

## Personal Jurisdiction

### Service of Process

Defendant first asserts that this Court is without personal jurisdiction because she was never served with process. Although a return of service was filed in this Court on February 13, 2001, Defendant claims that she was not personally served. Defendant represents that she was at work and not at her home in New Jersey at the date and time when the process server indicates that service of the summons and complaint was made. (*Affidavit of Victoria Zdrok* at P 4). Defendant claims that she "learned of the existence of the [instant action] only after receiving a copy of the summons and complaint in the ordinary mail ... on or about February 8 or 9, 2001."

In light of the factual dispute, the Court cannot determine, at this juncture, whether Defendant was properly served. The Court will resolve the issue after an evidentiary hearing, which the Court schedules for **September 16, 2003 at 1:30 p.m.** The Court will, however, proceed to consider Defendant's argument that, even if she was properly [*17] served, personal jurisdiction is lacking because the requirements of the Ohio long-arm statute and constitutional due process are not satisfied.

### *In personam* Jurisdiction

In order to subject a Defendant to the *in personam* jurisdiction of this Court, the Court must find that the Ohio long-arm statute, R.C. § 2307.382, permits the exercise of jurisdiction and that the Court's jurisdiction comports with the limits of due process. *National Can Corp. v. K Beverage Co., 674 F.2d 1134 (6th Cir. 1982)*. The burden of proof as to these issues rests with the Plaintiff. *Welsh v. Gibbs, 631 F.2d 436, 438 (6th Cir. 1980)*. Because, however, the issue of jurisdiction is being determined solely on the basis of the current record, *i.e.,* pleadings and affidavits, Plaintiff is required to make only a *prima facie* showing of jurisdiction. *Id. at 438-39*. The Court considers the pleadings and affidavits in the light most favorable to the Plaintiff. *Id.*

The Ohio Supreme Court has concluded that the Ohio long-arm statute is not as expansive as the constitutional limits of due process. *See Goldstein v. Christiansen, 70 Ohio St.3d 232, 1994 Ohio 229, 638 N.E.2d 541 (Ohio 1994).* [*18] Nevertheless, the central inquiry for this Court is whether the Defendant has certain minimum contacts with the State of Ohio so as not to offend "traditional notions of fair play and substantial justice." *Calphalon Corp. v. Rowlette, 228 F.3d 718, 721 (6th Cir. 2000)* (citations omitted). Thus, the Court proceeds with the due process analysis.

Personal jurisdiction may be based on either general or specific jurisdiction, depending on the nature of the contacts that the Defendant has with the forum state. *Bird v. Parsons, 289 F.3d 865, 873 (6th Cir. 2002)*. General jurisdiction exists only where "a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Id.,* citing *Third National Bank in Nashville v. WEDGE Group, Inc., 882 F.2d 1087, 1089 (6th Cir. 1989)*. Specific jurisdiction occurs when "a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Id.,* quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8, 80 L. Ed. 2d 404, 104 S. Ct. 1868 (1984).* [*19]

The Sixth Circuit has developed a three-part test for determining whether the particular circumstances of a case provide sufficient contact between a non-resident Defendant and the forum state to support the exercise of specific personal jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Machine Co. v. Mohasco Industries, Inc., 401 F.2d 374, 381 (6th Cir. 1968)*. If the criteria are satisfied, jurisdiction is appropriate if the facts of the particular case are such that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington, 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945)*.

The first step of the analysis considers whether the Defendant has purposely availed [*20] himself or herself of the privilege of conducting activities in the forum state, so as to invoke the benefits and protections of its laws. In most cases, it is a common sense inquiry as to "whether the defendant has transacted business within the forum state in the usual, commercial sense of 'doing business.'" *American Greetings Corp. v. Cohn, 839 F.2d 1164, 1169 (6th Cir. 1988)*. The inquiry is designed to consider whether the Defendant has become involved with the forum through actions freely and intentionally done which have effects in the forum state. *In-Flight Devices Corp. v. Van Dusen Air, Inc., 466 F.2d 220, 226, 228 (6th Cir. 1972)*.

The second step of the analysis considers whether the Plaintiffs' cause of action arises out of or is related to the Defendant's contacts with the forum state. The third part of the analysis requires inquiry into whether a Defendant's conduct establishes a "substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Southern Machine, 401 F.2d at 381*. This part of the analysis considers whether the Defendant's conduct relates to the forum [*21] in a way that the Defendant should have reasonably anticipated being haled into court. *World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980)*. When the first two parts of the three-step analysis are satisfied, an inference arises that the third part of the analysis is also satisfied. *First National Bank of Louisville v. J.W. Brewer Tire Co., 680 F.2d 1123, 1126 (6th Cir. 1982)*.

In this case, general personal jurisdiction over Defendant Zdrok does not exist. Thus, the Court applies the three-part test for determining whether specific personal jurisdiction exists. With respect to the first element, purposeful availment, the Plaintiffs assert that the nature of Defendant's website is such that she could reasonably have anticipated being haled to court in this forum.

In *Bath & Body Works, Inc. v. Wal-Mart Stores, Inc., 2000 U.S. Dist. LEXIS 20168, No. C2-99-1190, 2000 WL 1810478 (S.D. Ohio Sept. 12, 2000)*, this Court considered the circumstances under which the maintenance of an internet website can satisfy the purposeful availment requirement. This Court relied on the test set forth in *Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D. Pa. 1997)*, [*22] for guidance. The *Zippo* court categorized internet use into a spectrum of three areas. At one end of the spectrum, personal jurisdiction is proper because the Defendant clearly does business over the internet by entering into contracts with residents of other states which involve the knowing and repeated transmission of computer files over the internet. *Bath & Body Works, Inc., 2000 U.S. Dist. LEXIS 20168, 2000 WL 1810478 at *8* (citations omitted). At the other

end of the spectrum, the Defendant merely establishes a passive website that does nothing more than provide information to users. In this instance, the exercise of jurisdiction is not proper. *Id.* It is the middle of the spectrum, where the Defendant's website allows a user to exchange information with a host computer, that the exercise of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the website. *Id.* (citations omitted).

In *Mink v. AAAA Development LLC, 190 F.3d 333 (5th Cir. 1999)*, the Fifth Circuit applied the *Zippo* test in considering whether the operation of a non-resident Defendant's website gave rise to specific personal [*23] jurisdiction. The website provided users with a printable mail-in order form, a toll-free telephone number, a mailing address and an electronic mail address. Orders were not taken through the website and the Defendant had no direct contact with the forum state. The Fifth Circuit held that "the presence of an electronic mail access, a printable order form, and a toll-free phone number on a website, without more, is insufficient to establish personal jurisdiction. Absent a defendant doing business over the Internet or sufficient interactivity with residents of the forum state, we cannot conclude that personal jurisdiction is appropriate." *Id. at 337*.

Defendant Zdrok concedes that her website falls in the "middle ground" identified by the *Zippo* court. (*Defendant's Motion* at 11). Zdrok argues that the website is more passive than interactive in nature. In support of this assertion, Zdrok notes that visitors to the website cannot purchase merchandise (*i.e.,* videos, photographs, used lingerie, or other items) from her directly over the internet. Rather, such orders are mailed to her home in New Jersey.

Plaintiffs argue that despite the mail-order situation, [*24] Defendant's website offers a variety of interactive features to make the site more interactive than passive. For example, Defendant's site includes an interactive quiz contest, previously entitled "VICTORIA'S SECRET of the Month," where visitors are asked to guess "what is Victoria's Secret this month?" (*Complaint* at P 5). The visitors can win prizes and an auction is held for the purchase of used lingerie and other items. Further, the website offers visitors a "tour" to sample what subscribers, who pay $ 19.95 per month, can view. (*Id.*). Visitors to the site are further advised that if they become subscribers, they can use "webcams" to view Zdrok showering and performing other activities in the nude. (Exhibit 2 attached to *Complaint*). Plaintiffs argue that this level of interactivity is sufficient to confer personal jurisdiction.

The Court concludes that the Defendant's website, while in the middle ground identified by the *Zippo* court, is certainly more interactive than passive. As the Sixth

Circuit recently held, "[a] defendant purposely avails [herself] of the privilege of acting in a state through [her] website if the website is interactive to a degree that [*25] reveals specifically intended interaction with residents of the state." *Neogen Corporation v. Neo Gen Screening, Inc., 282 F.3d 883, 890 (6th Cir. 2002)*, citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)*.

In *Neogen,* the Defendant's website advertised its business of diagnostic testing of blood samples for new-born infants. The website consisted primarily of passively posted information, advertising its services. The site did, however, allow visitors to purchase testing services on-line through a password. The Sixth Circuit concluded that this aspect of the site was "an interactive usage showing that NGS [a Pennsylvania corporation] has intentionally reached out to Michigan customers and enabled them to use NGS's services from Michigan." *Id. at 891.* The Sixth Circuit further concluded that the interactive nature of the site was demonstrated by the fact that NGS advertised it would perform testing of blood samples for parents in any state. *Id.* Also of importance was a chart on the website listing statistical data for testing done in various states, including Michigan. [4] *Id.* In sum the Sixth Circuit [*26] concluded that the Plaintiff had made a *prima facie* showing of personal jurisdiction.

> 4    In concluding that personal jurisdiction existed, the Sixth Circuit also focused on the fact that NGS held fourteen yearly contracts with Michigan customers. Although NGS argued that these contracts represented an insignificant percentage of NGS's overall business, the court stated that the "test for personal jurisdiction is not based on a 'percentage of business' analysis ... but rather on whether the absolute amount of business conducted by NGS in Michigan represents something more than 'random, fortuitous, or attenuated contacts' with the state." *Neogen Corporation, 282 F.3d at 891-92.* (citations omitted).

Similar to the website in *Neogen,* the Defendant's website offers visitors the ability to purchase "services" on-line through assignment of a password. In addition, the site provides a great deal of interactivity to visitors even without the use of a password. For example, the site makes reference [*27] to "Victoria's secret desires" and asks visitors to participate in a quiz called "Victoria's Secret of the Month." In the Court's view, this interactivity exceeds that in the *Neogen* case. In view of the degree of interactivity which the Defendant's website displays, the Court finds that Defendant's contacts with this state are not random, fortuitous or attenuated. Thus, by using the name "Victoria's Secret," a well-known and well-regarded brand name in this country, the Defendant

should have reasonably anticipated that her actions would have created a substantial connection with the forum state. In sum, this Court finds that Defendant purposely availed herself of conducting business in this state such that she should have reasonably anticipated being haled to court in the forum for her actions.

The second part of the *Mohasco* test -- that the cause of action must arise from the Defendant's activities in the forum state -- is also satisfied. Plaintiffs claim that the Defendant's many references to the "Victoria's Secret" name have caused a variety of harm, including economic harm. Defendant asserts that Plaintiffs have offered no proof of such damages. At this juncture, however, [*28] such proof is unnecessary. The Court must construe the pleadings in the light most favorable to Plaintiffs in considering whether Plaintiffs make a *prima facie* showing. In so doing, the Court finds that Defendant's activities have caused Plaintiffs harm sufficient to satisfy the "arising from" requirement of the *Mohasco* test.

Finally, this Court concludes that the Plaintiffs have sufficiently shown that the Defendant's acts have a substantial enough connection with the forum state to make the exercise of jurisdiction over the Defendant reasonable. Defendant's use of the name "Victoria's Secret" and the highly interactive nature of her website should have allowed the Defendant to realize that her actions would have consequences in this state.

In sum, the Court concludes that it has personal jurisdiction over Defendant Zdrok. Thus, to the extent Defendant argues that the default judgment should be set aside because the Court lacks jurisdiction, the Defendant's argument is without merit. The Court will, however, resolve the service of process issue at a later date after an evidentiary hearing.

### Defense to Merits of the Plaintiffs' Claims

In moving to set aside the [*29] default judgment, the Defendant also contends that she has a meritorious defense to one of the Plaintiffs' claims. Defendant also argues that she has removed all references to "Victoria's Secret" on her website. As the Plaintiffs point out, however, the Defendant's cessation of allegedly illegal conduct does not constitute a defense to the claims.

With respect to her purported substantive defense, the Defendant relies on the United States Supreme Court's recent decision in *Moseley v. V Secret Catalogue, Inc., 537 U.S. 418, 123 S. Ct. 1115, 155 L. Ed. 2d 1 (2003)*, to argue that in order to succeed on their trademark dilution claim, Plaintiffs would have to come forward with proof of actual injury to the economic value of their mark. [5] Prior to this case, which reversed a decision of the Sixth Circuit, a claim of trademark dilution under the Federal Trademark Dilution Act, *15 U.S.C. § 1125,*

could be established without proof of actual harm. Defendant argues that, in light of the change in law, she has a meritorious defense to the Plaintiffs' dilution claim which warrants setting aside the judgment rendered on that claim.

> 5   The Supreme Court held that the language of the statute "unambiguously requires a showing of actual dilution, rather than a likelihood of dilution." *Moseley, 123 S. Ct. at 1124.* The statute provides, in pertinent part:
>
>> The owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous *and causes dilution* of the distinctive quality of the mark, and to obtain such other relief as is provided in this subsection ....

> *15 U.S.C. § 1125(c)(1)* (emphasis added).

[*30] As the Plaintiffs point out, in this circuit, "a change in decisional law is usually not, by itself, an 'extraordinary circumstance' meriting *Rule 60(b)(6)* relief." *Blue Diamond Coal Co. v. Trustees of the UMWA Combined Benefit Fund, 249 F.3d 519, 524 (6th Cir. 2001)* (citations omitted). Rather, the presence of "some other special circumstance" is required in order to grant relief under *Rule 60(b). Id.* The Court finds no special circumstance in this case that would overcome the general rule that changes in decisional law do not serve as a basis for *Rule 60(b)* relief. Furthermore, as the Plaintiffs point out, this Court did not award damages on Plaintiffs' dilution claim and did not, therefore, attempt to value the harm Plaintiffs' allegedly suffered by the diluted mark.

In sum, although Defendant may have been able to successfully defend against the Plaintiffs' trademark dilution claim, the Court concludes that this fact does not warrant setting aside the entry of default judgment.

### 3. Culpable Conduct Leading to the Default

The final factor to consider in resolving Defendant's motion to set aside the default judgment is whether there exits culpable conduct [*31] on the part of Defendant that led to the default. The Court has little trouble concluded that this factor weighs against the Defendant. As the record reflects, this Court advised Plaintiff and her attorney, in response to two separate letters which this Court construed as motions to proceed without local counsel, that Defendant had yet to answer the Plaintiffs' complaint. Defendant was well aware that she had to abide by this Court's rules, obtain local counsel and file an answer or otherwise move in response to the complaint. Defendant failed to do so and the consequence of default ensued. This Court finds that the Defendant is solely responsible for the current case posture.

### Conclusion

In sum, this Court finds no basis under *Rule 60(b)* that warrants setting aside the default judgment entered against Defendant Zdrok.

In reaching this conclusion, the Court specifically rejects the Defendant's argument that the conduct of Plaintiffs' counsel somehow supports Defendant's request for relief under *Rule 60(b)(3)*. While Plaintiffs' counsel may have engaged in some pre-filing settlement discussions with Mr. Sloca, who is not counsel of record in this case, the subsequent filing [*32] of the lawsuit does not amount to any sort of misconduct. Further, while Defendant takes issue with the veracity of the process server's representation that a service was made on the Defendant, the dispute in no way implicates the conduct of counsel. In addition, the Court finds that the equities do not weigh in favor of the Defendant so as to justify setting aside the default judgment under *Rule 60(b)(6)*.

For these reasons, the Defendant's Motion for Relief from Judgment is provisionally denied, subject to the Court resolution of the service of process issue.

### B. Plaintiffs' Motion to Show Cause and for Sanctions / Defendant's Motion to Strike

On October 31, 2002, Plaintiffs filed a Motion for an Order to Show Cause as to why Defendant should not be held in contempt of this Court's April 10, 2001 Order that permanently enjoined her continued use of the name "VICTORIA'S SECRET." Plaintiffs also request that the Court award them double their fees and costs in order to deter Defendant's conduct. In response, the Defendant filed a Motion to Strike on the basis that the Motion to Show Cause was not included in the materials delivered to her counsel's office.

From a review [*33] of the record, it appears to the Court that Defendant's counsel was under the mistaken impression that the Plaintiffs filed two separate motions -- one to Show Cause and the other for Sanctions. The two requests are, however, contained in one pleading which Defendant apparently did receive. Thus, the Defendant's Motion to Strike is denied.

2003 U.S. Dist. LEXIS 16159, *

In their Motion to Show Cause, Plaintiffs assert that, as of October 10, 2002, Defendant Zdrok was using the website "Victoria's Secret Desires" to advertise her services as a spokesmodel for products. Plaintiffs attach a copy of the site page to their motion. At the top of the page appear the words "Victoria's Secret Desires." The page reveals shows that it was accessed through the website "planetvictoria.com." (Exhibit 1 attached to *Affidavit of Carrie A. Shufflebarger, Esq.*). Defendant contends that the page was not part of the website in October 2002. Defendant particularly avers that she "would have quickly deleted the superceded file on the server if only [Plaintiffs] had told me it was still showing up on a search engine and had asked me to delete it. I was not aware until this moment that anyone could still even see this old superceded [*34] page ...." (*Affidavit of Victoria Zdrok* at P 3). Defendant attaches a printout of the current webpage which contains no reference to "Victoria's Secret Desires."

In light of Defendant Zdrok's representations, the Court declines to hold her in contempt of the injunction Order. The Court admonishes Defendant that violation of this Court's Orders is a serious matter, however, the Court is not convinced that a finding of contempt is warranted. Further, the Court concludes that an award of double the Plaintiffs' attorneys' fees and costs is unnecessary to deter future violations. The record reveals no further instances of alleged violations by Defendant Zdrok. For these reasons, the Plaintiffs' Motion to Show Cause and for Sanctions is denied.

**C. Defendant's Motion for Consideration of Previously Filed Memorandum and Request for Oral Argument**

On January 30, 2003, the Defendant filed a motion for the Court to consider her Supplemental Memorandum in Opposition to the Plaintiffs' Motion to Show Cause, filed on January 3, 2003. The Court considered the memorandum in making the above ruling. In her January 30, 2003 motion, Defendant also requests oral argument on the earlier [*35] filed Motion for Relief from Judgment. The Court concludes that such argument is unnecessary.

The Defendant's January 30, 2003 motion is therefore granted in part and denied in part.

**III.**

In light of the foregoing, Defendant's Motion for Relief from Judgment **(Doc. # 26)** is **PROVISIONALLY DENIED**. The Plaintiffs' Motion to Show Cause and for Sanctions **(Doc. # 30) DENIED**. Defendant's Motion to Strike **(Doc. # 37)** is **DENIED**. The Defendant's Motion for Consideration and Request for Oral Argument **(Doc. # 46)** is **GRANTED in part and DENIED in part.**

This matter is hereby scheduled for an **EVIDENTIARY HEARING** on the Service of Process issue on **Tuesday, September 16, 2003 at 1:30 p.m.** The parties shall be prepared to present witness testimony and documentary evidence to the Court to resolve the matter.

**IT IS SO ORDERED.**

8 - 28 - 2003

**DATE**

EDMUND A. SARGUS, JR.

**UNITED STATES DISTRICT JUDGE**



6 of 9 DOCUMENTS

PHILIP H. WOOD, Plaintiff, v. 1-800-GOT-JUNK?, LLC, et al., Defendants.

## Case No. 2:06-CV-117

## UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO, EASTERN DIVISION

*2007 U.S. Dist. LEXIS 24876*

**March 22, 2007, Decided**
**March 22, 2007, Filed**

**COUNSEL:** **[*1]** For Phillip H. Wood doing business as Got Junk?, Plaintiff: Brian James Downey, LEAD ATTORNEY, Joseph Richard Dreitler, Frost Brown Todd LLC, Columbus, OH; Mary R True, Frost Brown Todd LLC, Cincinnati, OH.

For 1-800-GOT-JUNK? LLC, RBDS Rubbish Boys Disposal Service Inc. doing business as 1-800-GOT-JUNK?, DLC & Associates, LLC doing business as 1-800-GOT-JUNK?, Srose Enterprises, Ltd., David O'Brien, Defendants: Keith Shumate, LEAD ATTORNEY, Squire, Sanders & Dempsey, Columbus, OH; Heather L Stutz, Squire Sanders & Dempsey LLP, Columbus, OH; Philip G Hampton, II, Dickstein Shapiro LLP, Washington, DC US.

**JUDGES:** EDMUND A. SARGUS, JR., UNITED STATES DISTRICT JUDGE. Magistrate Judge Mark R. Abel.

**OPINION BY:** EDMUND A. SARGUS, JR.

**OPINION**

**OPINION AND ORDER**

This matter is before the Court for consideration of the Motion to Dismiss for Lack of Personal Jurisdiction filed by Defendant RBDS Rubbish Boys Disposal Service, Inc. (Doc. # 9). For the reasons that follow, the motion is denied.

**I.**

Plaintiff, Philip H. Wood ["Plaintiff"], brings this action for alleged trademark infringement, false designation of origin and unfair competition under the Lanham Act, *15 U.S.C. § 1051,* **[*2]** *et seq.,* against Defendants 1-800-Got-Junk?, LLC, RBDS Rubbish Boys Disposal Service, Inc., DLC & Associates, LLC, Srose Enterprises, Ltd., and David O'Brien. The Court has subject matter jurisdiction pursuant to *28 U.S.C. § 1331.* Defendant RBDS Rubbish Boys Disposal Service, Inc. ["RBDS"] challenges this Court's exercise of personal jurisdiction.

Plaintiff, a resident of the State of Ohio, operates a business under the trade name and mark "Got Junk?" [1] (*Am. Complaint* at P 1). Plaintiff's business of hauling and disposing materials began over eighteen years ago as "Phil's Hauling." (*Id.* at P 2). In 1996, Plaintiff began doing business under the "Got Junk?" name. (*Id.*). Defendant 1-800-Got-Junk?, LLC is a Canadian limited liability company with its principle place of business in Vancouver, British Columbia, Canada. (*Id.* at P 4). Defendant RBDS is a Canadian corporation with its principle place of business in Vancouver, British Columbia, Canada. (*Id.* at P 3). Defendant DLC & Associates, LLC is a limited liability company organized under the laws of the State of Wyoming. (*Id.* at P 7).

> 1   The principle place of business is located in Newark, Ohio. (*Am. Compl.* at P 1).

**[*3]** Plaintiff alleges that DLC & Associates, LLC is registered to do business in the State of Ohio under the name 1-800-Got-Junk? and that it owns and operates 1-800-Got-Junk? franchise, located in Columbus, Ohio. (*Id.* at P 7). Defendant David O'Brien is the registered

agent and operator of the franchise. (*Id.*). Defendant Srose Enterprises, Ltd. is a limited liability company organized under the laws of the State of Ohio. (*Id.* at P 8). Plaintiff alleges that Defendant Srose Enterprises, Ltd. owns and operates a 1-800-Got-Junk? franchise, located in Dublin, Ohio. (*Id.*).

Defendant RBDS owns the trademark 1-800-Got-Junk? and licenses its use to Defendant 1-800-Got-Junk?, LLC. (Exhibit 11, Doc. # 33; License Agreement, Exhibit 7). In turn, 1-800-Got-Junk? LLC franchises the trademark throughout the United States, including in the State of Ohio. (*Declaration of Brian Scudamore* at PP 1, 6 attached as Exhibit A to Doc. # 9). Defendant RBDS is not a party to any franchise agreement between the LLC and the entities in the United States, but RBDS provides services to assist the LLC in the operation of the LLC's franchise agreements. (*Id.*). In particular, RBDS operates a **[*4]** client Call Center, located in Canada, that receives telephone calls and books hauling services for United States residents through local franchises. (*Scudamore Decl.* at P 6; *Scudamore Depo.* at 23-30). RBDS is the subscriber to the 1-800-Got-Junk? telephone number that customers use to call the Call Center. (Resp. to Interrog. # 20; *Scudamore Depo.* at 93). The record reveals that the RBDS Call Center receives a significant number of phone calls from Ohio residents [2].

> 2   During the month of July 2006, the Call Center received 2,800 telephone calls from residents in the State of Ohio. (*Scudamore Depo.* at 102-04).

In addition to operating the Call Center, RBDS developed and authorized the content of the "www.1800gotjunk.com" website. The website advertises hauling and disposal services under the 1-800-Got-Junk? mark and advertises franchise opportunities in the United States, including the State of Ohio. (Suppl. Resp. to Interrog. # 15, Exhibit 10 to *Scudamore Depo.*). With respect to physical **[*5]** advertisements in Ohio, pursuant to its licensing agreement with RBDS, the LLC has obtained the consent of RBDS to advertise in Ohio. (Doc. # 34, Exhibit 7 at P 12) [3].

> 3   The agreement states in part: "The licensee agrees that before conducting any advertising or display of the marks or advertising of the system it will obtain the prior consent of licensor to the proposed form of advertising or display, which consent will not be unreasonably withheld by the licensor." (Doc. # 34, Exhibit 7 at P 12). When deposed, Brian Scudamore conceded that the term "advertisements" in the licensing agreement includes advertisements in the State of Ohio. (*Scudamore Depo.* at 101).

The RBDS development department also assists the LLC in its franchise pursuits in the United States by seeking out and interviewing potential franchisees. (*Scudamore Depo.* at 45-46). The RBDS development department maintains contact with all franchisees, making at least one to two visits per year, including visits to franchisees in the State **[*6]** of Ohio. (Exhibits 2, 3). RBDS receives a 6% markup on cost allocation for both the operation of the development department and the Call Center. (*Scudamore Depo.* at 23-30; Exhibit 3).

Defendant RBDS moves to dismiss Plaintiff's Complaint for lack of personal jurisdiction. The Court now considers the merits of this motion.

**II.**

**A. Standard.**

In considering a motion to dismiss for lack of personal jurisdiction, it is the Plaintiff's burden to show that personal jurisdiction exists. *CompuServe v. Patterson, 89 F.3d 1257, 1261-62 (6th Cir. 1996)*. Where neither party requests an evidentiary hearing on the jurisdictional issue, as is the case here, "the Court must consider the pleadings and affidavits in a light most favorable to the Plaintiff" and the Plaintiff "need only make a *prima facie* showing of jurisdiction." *Id.*, citing *Theunissen v. Matthews, 935 F.2d 1454, 1458-59 (6th Cir. 1991)*.

**B. Discussion.**

A federal court applies the law of the forum state to determine whether personal jurisdiction exists. See *L.A.K., Inc. v. Deercreek Enterprises, 885 F.2d 1293, 1298 (6th Cir.1989)*. In order for **[*7]** the Plaintiff to make a *prima facie* showing of jurisdiction, Plaintiff must establish that: (1) Ohio's long-arm statute confers personal jurisdiction and (2) the Court's exercise of personal jurisdiction would not offend the constitutional limits of due process under the *Fourteenth Amendment to the United States Constitution. See CompuServe, 89 F.3d at 1262*.

**1. Ohio's Long-Arm Statute**

The Court will first address whether RBDS is subject to personal jurisdiction pursuant to Ohio's long-arm statute. Plaintiff asserts that personal jurisdiction over RBDS exists pursuant to *Ohio Rev.Code §§ 2307.382(A) (1-4)*, which provides:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(1) Transacting any business in this state;

(2) Contracting to supply services or goods in this state;

(3) Causing tortious injury by an act or omission in this state;

(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from [*8] goods used or consumed or services rendered in this state;

*R.C. § 2307.382(A).*

With respect to *(A)(1),* the Ohio Supreme Court holds that "transacting any business" is to be interpreted broadly. *See Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc., 53 Ohio St. 3d 73, 559 N.E.2d 477, 480 (Ohio 1990).* That is, the phrase means "to carry on business" or "to have dealings" and has a broader meaning than the word "contract." *Goldstein v. Christiansen, 70 Ohio St. 3d 232, 1994 Ohio 229, 638 N.E.2d 541, 544 (Ohio 1994).* A physical presence in Ohio is not required for personal jurisdiction to exist over a nonresident defendant. *Id.*

Plaintiff argues that this subsection is satisfied because RBDS has business dealings in Ohio. In particular, its development department seeks out franchise partners for the LLC in Ohio and RBDS employees make field visits to franchisees in Ohio. Through its Call Center, RBDS also answers calls from Ohio customers and owns the 1-800-Got-Junk? telephone number which customers use to contact the Call Center. RBDS also developed and authorized the content for the website which advertises hauling and disposal services as well as franchise opportunities in the United [*9] States, including Ohio. Although RBDS does not have a permanent, physical presence in this state, such presence is not necessary to satisfy "transacting any business" in Ohio. The Court concludes that Plaintiff has come forward with sufficient evidence to show that RBDS satisfies *subsection (A)(1)* of the Ohio long-arm statute.

The Court also concludes that there is sufficient evidence to satisfy the exercise of personal jurisdiction under *subsection(A)(4).* RBDS' approval of advertising and franchisee arrangements were acts committed outside the State of Ohio that served to allegedly cause tortious injury, specifically, trademark infringement, in this state [4]. In addition, the evidence shows that RBDS, through the LLC, regularly solicits business in this state. In addition,

the "www.1800gotjunk.com" website, which RBDS develops and approves of, not only advertises the allegedly infringing name, but also allows Ohio residents to book hauling services with Ohio franchisees, and advertises franchise opportunities in Ohio.

4 Trademark infringement constitutes a tort. *See Hoover Co. v. Robeson Industries Corp., 904 F.Supp. 671, 673 (N.D. Ohio 1995).*

[*10] While Ohio's long-arm statute has been construed to give Ohio courts the maximum jurisdiction permitted under the *Due Process Clause,* the Supreme Court of Ohio has held that the long-arm statute may not exceed the limits of due process. *Goldenstein v. Christiansen, 638 N.E.2d 541, 545 n., 170 Ohio St. 3d 232, 1994 Ohio 229 (Ohio 1994); see also Cole v. Mileti, 133 F.3d 433, 436 (6th Cir. 1998).* Accordingly, the Court now considers whether the exercise of personal jurisdiction over RBDS comports with due process.

**2. Due Process**

The fundamental inquiry is whether this Court's exercise of personal jurisdiction over RBDS would offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945).* A Court may exercise two types of jurisdiction over a nonresident defendant: specific and general. Specific jurisdiction exists if the subject matter of the lawsuit arises out of or is related to the Defendant's contacts with the forum. *See Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co., Ltd., 91 F.3d 790, 793 (6th Cir.1996).* General jurisdiction exists when a Defendant's "continuous and systematic" [*11] conduct within the forum state renders that Defendant amenable to suit in any lawsuit brought against it in the forum state. *Id.* Plaintiff asserts that there is both general and specific jurisdiction over RBDS.

**General Jurisdiction**

Plaintiff argues that the exercise of general jurisdiction over RBDS is proper because RBDS takes orders from Ohio residents, maintains a website that solicits Ohio residents, helps develop Ohio franchises, and visits Ohio franchisees one to two times per year. Plaintiff cites *Hunter v. Mendoza, 197 F.Supp.2d 964 (N.D. Ohio 2002)* in support of his contention in favor of general personal jurisdiction. In *Hunter,* the out-of-state Defendant had several permanent office locations and employees in the State of Ohio; its business was well-known in the State of Ohio; and substantial revenue was derived from business in Ohio.

Although RBDS assists the LLC in establishing franchises in this state and visits the state one to two

times per year, these are not the sorts of "continuous and systematic" contacts sufficient to make RBDS amenable to any lawsuit in the State of Ohio. General jurisdiction exists only where "a defendant's [*12] contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Third National Bank in Nashville v. WEDGE Group, Inc., 882 F.2d 1087, 1089 (6th Cir.1989).* The Defendant's contacts with the forum state must be so substantial that "they amount to a surrogate for presence and thus render the exercise of sovereignty just, notwithstanding the lack of physical presence in the state." *ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 623 (4th Cir.1997).*

The Court does not find sufficient evidence of continuous and systematic contacts to establish general personal jurisdiction.

**Specific Jurisdiction**

Specific personal jurisdiction may be exercised over a Defendant in a suit arising out of or related to the Defendant's contacts with the forum state. *Conti v. Pneumatic Prods. Corp., 977 F.2d 978, 981 (6th Cir.1992).* Under *International Shoe* and its progeny, the Sixth Circuit has created a three-part test to determine whether specific jurisdiction may be exercised in accordance [*13] with the requirements of the *Due Process Clause. Southern Machine v. Mohasco Industries, 401 F.2d 374, 381 (6th Cir.1968).* First, the Defendant must purposefully avail itself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the Defendant's activities there. *Id.* Third, the acts of the Defendant or consequences caused by the Defendant must have a substantial enough connection with the forum state as to make the exercise of jurisdiction over the Defendant reasonable. *Id.*

**1. Purposeful Availment**

Purposeful availment is the *"sine qua non"* for personal jurisdiction. *Southern Machine v. Mohasco Industries, 401 F.2d at 381.* The purposeful availment requirement "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980).* The requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result [*14] of 'random', 'fortuitous', or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.*

*Ct. 2174, 85 L. Ed. 2d 528 (1985).* The application of that rule will vary with the quality and nature of the Defendant's activity, but it is essential in each case that there be some act by which the Defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Hanson v. Denckla, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958).*

Plaintiff asserts that RBDS' website is highly interactive, and that RBDS' website alone is enough to establish personal jurisdiction. In *Bath & Body Works, Inc. v. Wal-Mart Stores, Inc.,* No. C2-99-1190, 2000 U.S. Dist. LEXIS 20168, 2000 WL 1810478 (S.D. Ohio Sept. 12, 2000), this Court considered the circumstances under which the maintenance of an Internet website can satisfy the purposeful availment requirement. This Court relied on the test set forth in *Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F.Supp. 1119 (W.D. Pa.1997),* which categorized Internet use along a spectrum of conduct. At one end of the [*15] spectrum, personal jurisdiction is proper because the Defendant clearly does business over the Internet by entering into contracts with residents of other states, which involve the knowing and repeated transmission of computer files over the Internet. *Bath & Body Works, Inc.,*2000 U.S. Dist. LEXIS 20168, 2000 WL 1810478 at *8. In these circumstances, specific jurisdiction is established. At the other end of the spectrum, the Defendant merely establishes a passive website that does nothing more than provide information to users. In this instance, the exercise of jurisdiction is not proper. *Id.* It is the middle of the spectrum, where the Defendant's website allows a user to exchange information with a host computer, the exercise of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the website. *Id.*

In *V Secret Catalogue, Inc. v. Zdrok.,* No. 2:01-CV-0059, 2003 U.S. Dist. LEXIS 16159, 2003 WL 22136303 (S.D. Ohio Aug. 29, 2003) at *9, this Court held that Defendant's website, while falling in the "middle ground" identified by *Zippo* test, was sufficiently interactive to satisfy the purposeful availment prong of *Southern Machine.* [*16] There, the Defendant's website offered a variety of interactive features including an interactive quiz, auctions, and web camera sample "tours." *Id.* In the Court's view, RBDS' website, "www.1800gotjunk.com," also lies in the "middle ground" of the *Zippo* test but, it is more interactive than Defendant's website in *V Secret Catalogue.* RBDS' website allows Ohio residents to instantly book hauling services with local franchisees over the Internet. RBDS' website also advertises Ohio franchising opportunities and provides an "in depth tour" of the daily work of a franchisee.

In *Bath & Body Works,* this Court held there was purposeful availment where defendant's website advertised a toll-free order hotline, provided information for placing wholesale orders, allowed customers to join its e-mail list, and displayed a link for ordering on-line. Additionally, Defendant sold the allegedly infringing product directly to Ohio residents. *Bath & Body Works, Inc.,* 2000 U.S. Dist. LEXIS 20168, 2000 WL 1810478 at *8. Although RBDS does not sell franchising opportunities directly to Ohio residents, the website specifically advertises franchising opportunities and services to Ohio residents. Additionally, [*17] RBDS helped LLC establish Ohio franchises, and approved of the allegedly infringing advertisements in Ohio. RBDS is also the subscriber of the 1-800-Got-Junk toll free telephone number advertised on the website, and operates the Call Center which receives a substantial number of phone calls from Ohio residents. Even though RBDS itself does not own the website, RBDS developed the site and approves of its content.

Given the highly interactive level of the website, and RBDS' additional contacts with Ohio, the Court concludes that there is sufficient evidence to show that RBDS has purposefully availed itself of the privilege of conducting activities within this State.

### 2. Arising From Defendant's Activities

The second requirement for the exercise of specific personal jurisdiction is that the cause of action "must arise from the Defendant's activities" in the State of Ohio. *Southern Machine, 401 F.2d at 374.* The second criteria "does not require that the cause of action formally 'arise from' defendant's contacts with the forum; rather, this criterion requires only 'that the cause of action, of whatever type, have a substantial connection with the defendant's in-state [*18] activities.'" *Third National Bank v. WEDGE Group, Inc., 882 F.2d 1087, 1091 (6th Cir.1989),* quoting *Southern Machine, 401 F.2d at 384 n. 27.* "Only when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that contact." *Southern Machine, 401 F.2d at 384.*

In this case, Plaintiff's claims are for trademark infringement and unfair competition. RBDS' alleged contacts with Ohio include approving advertisement of the allegedly infringing trademark in Ohio, and helping establish allegedly infringing franchises in Ohio. In view of the allegations and the nature of RBDS' contacts with Ohio, the Court concludes that there is a substantial connection between the claims and RBDS' in-state activities.

### 3. Reasonableness

The final requirement for the exercise of specific personal jurisdiction is that the "acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Southern Machine, 401 F.2d at 384.* [*19] When the first two *Southern Machine* criteria are met, "an inference arises that the third, fairness, is also present; only the unusual case will not meet this third criterion." *First National Bank v. J.W. Brewer Tire Co., 680 F.2d 1123, 1126 (6th Cir.1982).*

Factors to consider in determining reasonableness include the burden on the Defendant; the forum State's interest in adjudicating the dispute; the Plaintiff's interest in adjudicating the dispute; the Plaintiff's interest in obtaining convenient and effective relief; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies. *Burger King, 471 U.S. at 477,* citing *World-Wide Volkswagen, 444 U.S. at 292.*

RBDS argues that it would be unreasonable for this Court to exercise specific jurisdiction over Defendant because Defendant is a foreign company and is thereby subject to a significant burden litigating in this forum. RBDS cites to *Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987)* in support of this argument. [*20] *Asahi* involved an indemnification claim asserted by Cheng Shin, a Taiwanese corporation, against Asahi, a Japanese corporation. The Supreme Court held that it was unreasonable to exercise specific jurisdiction over Asahi in California because the interests of the forum state and Cheng Shin in adjudicating the dispute in California were slight. Cheng Shin's claim was based on a transaction that took place in Taiwan; therefore, Cheng Shin did not have a significant interest for convenient relief in California. Further, since Plaintiff was not a resident of the forum state, and the claim was not for any wrongdoing in the state, the forum state's interest in adjudicating the dispute was slight. *Id. at 114.*

Unlike Asahi, the Plaintiff in this case is a resident of the forum state. All claims arise from events that occurred in Ohio. Further, as this Court has previously stated in *Bath & Body Works,* Ohio has "a strong interest in discouraging trademark infringement within the state and in seeing that its residents' property interests are protected." *Bath & Body Works, Inc. v. Wal-Mart Stores, Inc.,* 2000 U.S. Dist. LEXIS 20168, 2000 WL 1810478 at *9. Therefore, both Plaintiff [*21] and Ohio have significant interests in adjudicating the dispute in this forum. Although there will be some burden on RBDS litigating in Ohio, RBDS' burden does not outweigh both the Plaintiff's and Ohio's interest in adjudicating the dis-

2007 U.S. Dist. LEXIS 24876, *

pute. When transactions occur between parties located a great distance from each one, it is inevitable that one of the parties to a lawsuit will be inconvenienced. Such fact, standing alone, cannot render the exercise of jurisdiction unreasonable. Therefore, the Court holds that exercise of specific jurisdiction over RBDS would be reasonable.

In light of the foregoing, the Court concludes that it has specific personal jurisdiction over Defendant RBDS so as to comport with the requirements of the *Due Process Clause*. Defendant RBDS' motion to dismiss for lack of personal jurisdiction is without merit.

**III.**

The Motion to Dismiss for Lack of Personal Jurisdiction filed by Defendant RBDS Rubbish Boys Disposal Service, Inc. **(Doc. # 9)** is **DENIED.** The Clerk shall remove this motion from the Court's pending motions list.

**IT IS SO ORDERED.**

3-22-2007

**DATE**

**EDMUND A. SARGUS, JR.**

**[*22] UNITED STATES DISTRICT JUDGE**